**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI, EX REL. LYNN FITCH, ATTORNEY GENERAL, | |
| Plaintiff, | Case No. 3:21-cv-674 |
| v. | |
| ELI LILLY AND COMPANY, ET AL., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MANUFACTURERS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

      A.    The Manufacturers Sell Medications to Wholesalers. ........................... 2

      B.    PBMs Contract with Health Plans and Require the Manufacturers to Pay Rebates to Be Included on Formularies. ................................................ 3

      C.    The Rebate System Is Well Known. ..................................................... 4

      D.    The State Brings Claims Against the Defendants. ................................. 5

ARGUMENT .................................................................................................................. 7

I.    The Complaint Does Not State A Claim Under The Mississippi Consumer Protection Act. ......................................................................................................... 7

      A.    The Complaint Cannot State An MCPA Claim Because The Manufacturers Never Misrepresented The "Reported Price" Of Their Diabetes Medications. ............................................................................ 7

      B.    The MCPA Claim Also Fails Because the State Does Not Allege Fraud with Particularity. .............................................................................. 13

II.    The State Cannot Recover Compensatory or Punitive Damages Under the MCPA. ....... 16

III.    The Unjust Enrichment Claim Fails. ............................................................. 18

IV.    The Complaint Fails To State A Claim Of Civil Conspiracy. .......................... 20

CONCLUSION .......................................................................................................... 22

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Affordable Care, LLC v. JNM Off. Prop., LLC*,
2020 WL 3453746 (S.D. Miss. June 24, 2020) ....................................................17

*Alston v. Mississippi Dep't of Emp. Sec.*,
300 So. 3d 543 (Miss. Ct. App. 2020) ................................................................22

*BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*,
2012 WL 642304 (S.D. Miss. Feb. 27, 2012)................................................15, 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................7

*Bourgeois v. Live Nation Ent., Inc.*,
3 F. Supp. 3d 423 (D. Md. 2014) ........................................................................10

*Burley v. Homeowners Warranty Corp.*,
773 F. Supp. 844 (S.D. Miss. 1990).....................................................................12

*Byrd v. Paw Paw's Camper City, Inc.*,
967 So. 2d. 1251 (Ct. App. Miss. 2007) ..............................................................11

*Cal Dive Int'l, Inc. v. Schmidt*,
639 F. App'x 214 (5th Cir. 2016) ..........................................................................9

*Cole v. Chevron USA*,
Inc., 554 F. Supp. 2d 655 (S.D. Miss. 2007) ......................................................18

*Cook v. Wallot*,
172 So. 3d 788 (Miss. Ct. App. 2013) .................................................................21

*Crechale v. Carroll Fulmer Logistics Corp.*,
2020 WL 4927508 (S.D. Miss. Aug. 21, 2020)....................................................17

*U.S. ex rel. Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003) ..............................................................................14

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2008) ..............................................................................10

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
294 So. 3d 1178 (Miss. 2020)..............................................................................20

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ...............................................................14

*Gallagher Bassett Servs., Inc. v. Jeffcoat*,
    887 So. 2d 777 (Miss. 2004)..............................................................20

*Garziano v. Louisiana Log Home Co., Inc.*,
    569 F. App'x 292 (5th Cir. 2014) .......................................................10

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .............................................................21

*Harris Cnty., Texas v. Eli Lilly & Co.*,
    2022 WL 479943 (Feb. 16, 2022).......................................................19

*Harris Cnty., Texas* v. Eli Lilly,
    No. 4:19-cv-4994 ..........................................................................1, 20

*U.S. ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) .......................................................15

*Hernandez v. Ciba-Geigy Corp. USA*,
    200 F.R.D. 285 (S.D. Tex. 2001).......................................................13

*Langham v. Behnen*,
    39 So. 3d 970 (Miss. Ct. App. 2010) .................................................19

*Ledesma for Ledesma v. Dillard Dep't Stores, Inc.*,
    818 F. Supp. 983 (N.D. Tex. 1993) ......................................................9

*Lewis v. Miss. Farm Bureau Mut. Ins. Co.*,
    2007 WL 2122469 (S.D. Miss. July 20, 2007) ...................................16

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) .............................................................17

*M St. Invs., Inc. v. Zurich Am. Ins. Co.*,
    2014 WL 1326105 (S.D. Miss. Mar. 28, 2014) ..................................15

*Mayberry v. Bristol-Meyers Squibb Co.*,
    2009 WL 5216968 (D.N.J. Dec. 30, 2009)........................................13

*Michael v. Boutwell*,
    2015 WL 728516 (N.D. Miss. Feb. 19, 2015) ....................................13

*Montoya v. FedEx Ground Package Sys., Inc.*,
    614 F.3d 145 (5th Cir. 2010) ...............................................................8

*Mosley v. GEICO Ins. Co.*,
   2014 WL 7882149 (S.D. Miss. Dec. 16, 2014) .................................................18

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th Cir. 2013) .......................................................................15

*Omnibank of Mantee v. United S. Bank*,
   607 So. 2d 76 (Miss. 1992) ................................................................................18

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
   868 So. 2d 331 (Miss. 2004) ..............................................................................18

*Palmisano v. Mississippi Dep't of Wildlife, Fisheries, & Parks*,
   2015 WL 1925466 (S.D. Miss. Apr. 28, 2015)..................................................22

*Patel v. Holiday Hosp. Franchising, Inc.*,
   172 F. Supp. 2d 821 (N.D. Tex. 2001) ..............................................................15

*Powell v. Campbell*,
   912 So. 2d 978 (Miss. 2005) ...............................................................18, 19, 20

*Shushany v. Allwaste, Inc.*,
   992 F.2d 517 (5th Cir. 1993) .............................................................................15

*Skinner v. USAble Life*,
   200 F. Supp. 2d 636 (S.D. Miss. 2001)..............................................................12

*Taylor v. S. Farm Bureau Cas. Co.*,
   954 So. 2d 1045 (Miss. Ct. App. 2007) .............................................................11

*Waggoner v. Denbury Onshore, L.L.C.*,
   612 F. App'x 734 (5th Cir. 2015) ......................................................................20

*Washington County Board of Education v. Mallinckrodt ARD, Inc.*,
   431 F. Supp. 3d 698 (D. Md. 2020) .................................................................9, 10

*Watson Laboratories, Inc. v. State of Mississippi*,
   241 So. 3d 573 (Miss. 2018)..............................................................................17

*Wells v. Shelter Gen. Ins. Co.*,
   217 F. Supp. 2d 744 (S.D. Miss. 2002)..............................................................20

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .........................................................................14, 15

*In re Winstead*,
   605 B.R. 432 (S.D. Miss. Bankr. 2019) ............................................................10

iv

*Wise v. Valley Bank*,
  861 So. 2d 1029 (Miss. 2003) ...........................................................................17

*Young v. Bristol-Myers Squibb Co*,
  2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ....................................................13

**Statutes**

42 U.S.C. § 1395w-3a(c)(6)(B) ...................................................................... *passim*

42 U.S.C. § 1396r–8(a)(1) ...............................................................................4, 12

Miss. Code § 11-1-65(1)(a) ...................................................................................17

Miss. Code § 11-1-65(1)(c) ...................................................................................17

Miss. Code § 75-24-15(1) .....................................................................................16

Miss. Code § 75-24-5(1)-(2) ...................................................................................7

Miss. Code § 75-24-5(2)(e) ............................................................................7, 8, 11

Miss. Code § 75-24-5(2)(f)-(g) ..............................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(2)............................................................................................7

Fed. R. Civ. P. 9(b) .................................................................................15, 16, 18

## INTRODUCTION

Cutting-and-pasting at length from a recently-dismissed complaint filed by another government body in the Southern District of Texas,[1] the State alleges in its Third Amended Complaint that Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC (the "Manufacturers") engaged in a "scheme" that raised the prices of diabetes medications.   As was the case for earlier iterations of these theories, the State again falls well short of pleading any viable claim.

It is true, as the State alleges, that Pharmacy Benefit Managers (the "PBMs") require the Manufacturers to pay rebates for placement of the Manufacturers' medications on the PBMs' insurance formularies—indeed, this is an established and well-known industry practice.  And it is also true that the reported list prices of insulins increased in the years prior to 2018—as did the rebates demanded by PBMs.  But none of those facts supports the claims here because the Mississippi Consumer Protection Act ("MCPA") prohibits only *deceptive* prices—not allegedly high prices.  The State never identifies a single deceptive representation that any Manufacturer made about its prices, and its own allegations concede that the Manufacturers *accurately* reported their prices, exactly as federal law requires.  These deficiencies doom the State's MCPA claim. The related claims for unjust enrichment and civil conspiracy are legally defective too.  Under settled law, neither unjust enrichment nor civil conspiracy is an independent cause of action.  Both claims require a plaintiff to adequately plead an underlying tort, which the State has not done.

---

[1]   *See Harris Cnty., Texas v. Eli Lilly*, No. 4:19-cv-4994, ECF No. 128 ¶¶ 11, 397, 690, 700, 719, 725 (alleging the same "insulin pricing scheme" that generates "fraudulent prices," and asserting claims that include (1) "[r]epresenting that goods or services have … characteristics … which they do not have" in violation of Texas' consumer protection act; (2) fraud; (3) unjust enrichment; and (4) civil conspiracy); ECF No. 187 (dismissing all claims with prejudice).

The State has now had several opportunities to plead a plausible MCPA claim, including after the Manufacturers moved to dismiss the Second Amended Complaint and put the State on notice of these defects.  It has not cured those defects, and instead has merely reworded the same inadequate allegations the Manufacturers previously identified.  Because the State's legal theory remains fatally flawed, the Court should dismiss all claims against the Manufacturers with prejudice.

## BACKGROUND

### A.   The Manufacturers Sell Medications to Wholesalers.

The Manufacturers are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications.  (3d Am. Compl. ¶¶ 5, 44, 59, 73, 250.)  The Manufacturers, like other prescription drug manufacturers, do not sell medications directly to consumers, insurers, or health plans.  (*Id.* ¶¶ 299, 309.)  Instead, diabetes medications pass through a distribution chain.  (*Id.*)  Typically, the Manufacturers sell their diabetes medications to wholesalers, which re-sell the medications downstream to pharmacies.  (*Id.*)  Pharmacies then sell the medications to patients.  (*Id.*)  Occasionally, Manufacturers also sell their medications directly to pharmacies, bypassing wholesalers.  (*Id.* ¶ 299.)  Either way, the Manufacturers do not sell diabetes medications directly to patients or health plans.

The only price the Manufacturers set is the price they charge wholesalers or other direct purchasers (like certain pharmacies).  (*Id.* ¶¶ 301, 309.)  This price is aptly called the "Wholesaler Acquisition Cost" or "WAC," and is defined by federal law as "the manufacturer's list price for the drug or biological to wholesalers or direct purchasers in the United States."  *See* 42 U.S.C. § 1395w-3a(c)(6)(B).  The Manufacturers report the WACs of their prescription drugs.  (3d Am. Compl. ¶¶ 301–02.)  In fact, despite alleging that "[t]here is no transparency in [the diabetes medication] pricing system," the State admits that the Manufacturers "self-report . . . [WAC] to

publishing compendiums such as First DataBank, Redbook, and others." (*Id.*) The charts it includes in the complaint make this point. Because the Manufacturers disclose the WAC price of their diabetes medications, the State knows—and has long known—the specific WAC price of every insulin medication the Manufacturers sell, including the insulins at issue in the complaint (Humulin, Humalog, Levemir, Novolog, and Lantus). (*Id.* Figs. 2–6.) Notably, the complaint does not allege that these prices reflect anything other than the true WAC as defined and prescribed by federal law—i.e., the "list price for the drug . . . to wholesalers or direct purchasers," before accounting for "discounts, rebates or reductions in price." 42 U.S.C. § 1395w-3a(c)(6)(B).

While the Manufacturers set the WAC price—and only the WAC price—for their diabetes medications, the prices charged by other downstream actors differ. (3d Am. Compl. ¶¶ 299–300, 309, 311, 317–18.) After wholesalers pay the WAC price, they re-sell the medications to pharmacies at a separately negotiated price. (*Id.*) Pharmacies then sell medications to consumers at still different prices. (*Id.*) The price that a patient pays to a pharmacy for medication may be reimbursed in full or in part by the patient's health plan, and it varies based on each plan's particular benefit design. (*Id.*)

**B.    PBMs Contract with Health Plans and Require the Manufacturers to Pay Rebates to Be Included on Formularies.**

The PBMs (CVS Caremark, Express Scripts, and OptumRx) play a different role in the pricing of prescription drugs. PBMs work directly with health plans to manage pharmacy benefits for plan members. (*Id.* ¶ 6.) They also develop lists, called "formularies," that outline whether and to what extent a particular health plan covers prescription drugs purchased by the plan's members. (*Id.* ¶¶ 7, 309, 355.) And they require the Manufacturers to pay discounts—in the form of rebates on sales of the relevant drug—to secure favorable placement of that drug on these formularies. (*Id.* ¶¶ 11, 309, 331, 375, 447, 450.)

The complaint makes clear that the Manufacturers have reason to compete fiercely for formulary access.  Placement on a formulary means that a Manufacturer's medication receives insurance coverage, making it cheaper and more accessible to consumers.  (*Id.* ¶¶ 7–11, 356, 372–73, 375.)  By contrast, the exclusion of a drug from a formulary, or placement on unfavorable terms, can restrict patients' access to that drug, thwarting a Manufacturer's ability to get affordable drugs to those patients.  (*Id.* ¶¶ 329, 356, 372.)

### C.     The Rebate System Is Well Known.

That rebates are paid to PBMs are no secret.  The State, which operates health plans for government employees, contracts with PBMs to purchase prescription drugs.  (*Id.* ¶¶ 35, 122, 186–187, 199, 229, 424–31.)  In this role, the State not only knows that the Manufacturers pay rebates to PBMs, but also directly benefits from those rebates.  As the complaint explains, the State "relie[d] on PBMs as administrative agents" to secure the benefit of "rebates" negotiated by PBMs, which result in cost-savings to the State.  (*Id.* ¶¶ 392, 424, 457; *cf.* 2d Am. Compl. ¶ 397 ("the State has negotiated somewhere between a 15%–18% discount *off the reported price*") (emphasis added)).  Federal law also expressly contemplates—and indeed sometimes requires—rebates.  *E.g.*, 42 U.S.C. § 1395w-3a(c)(6)(B) (discussing rebates); 42 U.S.C. § 1396r–8(a)(1) (*requiring* manufacturers to "enter[] into … rebate agreement[s] … on behalf of States" in certain circumstances).

The complaint also acknowledges that the Manufacturers and PBMs have openly disclosed the payment of rebates.  (3d Am. Compl. ¶¶ 372–74.)  At a congressional hearing, for example, representatives from each Manufacturer discussed the "significant demand for rebates" from PBMs.  (*Id.* ¶ 372.)  They explained that higher rebates lead to higher prices because "[s]eventy-five percent of [the reported] price is paid for rebates and discounts to secure [formulary position]."

(*Id.* ¶ 373.)  And they testified that refusing to provide rebates would have severe consequences because PBMs would stop covering the Manufacturers' medications.  (*Id.* ¶¶ 372–73.)

### D.      The State Brings Claims Against the Defendants.

The Mississippi Attorney General filed this suit on behalf of the State, as well as on behalf of Mississippians with diabetes under the *parens patriae* doctrine.  The complaint, like its now-dismissed predecessor in the Southern District of Texas[2]—alleges that the Manufacturers and the PBMs engaged in a purported "Insulin Pricing Scheme" that increased the prices the State and its citizens paid for the diabetes medications.  (*Id.* ¶¶ 349–65, 476–97.)  But despite labelling it a "scheme," all the State alleges is that PBMs have used their "leverage over the system" to require Manufacturers to pay increasingly larger rebates for formulary access, and that the Manufacturers "inflated their list prices" as a result.  (*Id.* ¶¶ 349–65.)  The State contends that the "price" of diabetes medications is higher than it should be (*id*.), and that the PBMs and Manufacturers in turn make more money (*id.* ¶¶ 386–420).

While the State purports to base its MCPA claims on supposed misrepresentations, its allegations are overwhelmingly and tellingly divorced from that theory.  Instead, the complaint devotes dozens of paragraphs to detailing diabetes symptoms (*id.* ¶¶ 238–45), the history of insulin production (*id.* ¶¶ 246–60), and improvements in diabetes treatments (*id.* ¶¶ 261–77).  It alleges the list price of diabetes medications has increased across manufacturers since the 1990s.  (*Id.* ¶¶ 278–97.)  And it details the pharmaceutical supply chain discussed above, including the role PBMs play.  (*Id.* ¶¶ 298–348.)

---

[2]    *See* Note 1, *supra*.  In addition to the substantive overlap between the complaints, the plaintiff governments have counsel in common.  *Compare* 3d Am. Compl. at 123, *with Harris Cnty.*, No. 4:19-cv-4994, ECF No. 128 at 171.

The complaint does not allege any "[d]ecei[t]" by the Manufacturers until its 433rd paragraph. And even then, it devotes only 13 paragraphs (spanning just two of the complaint's 111 pages) to allegations that the "Manufacturer Defendants [d]eceived the State and Mississippi [d]iabetics." (*Id.* ¶¶ 433–45.) Specifically, the State claims the Manufacturers "knew" that the list prices for their drugs "were false" because they lacked "transparen[cy]" and were "*completely untethered* from the actual prices that Defendants were paid for the drugs" (*id.* ¶¶ 433–35, 440 (emphasis added)). This cursory allegation is itself at odds with the State's earlier assertion that "the price that each entity in the pharmaceutical chain pays for a drug is *directly tied* to the manufacturer's [reported] list price" (*id.* ¶300 (emphasis added)). The complaint then alleges that the Manufacturers "caused the false list prices … to be published … through publishing compendia," "marketing materials," and "to the PBMs and their pharmacies." (*Id.* ¶¶ 437–38.) Notably, the State does *not* allege the Manufacturers made *any* misrepresentations about the relationship between the Manufacturers' realized profits and list prices. Nor could it. The State admits the Manufacturers openly disclose that their net profits are less than the prices they charge wholesalers, because they must pay rebates to PBMs. (*Id.* ¶¶ 372–73.)

After this cursory discussion of the Manufacturers, the State moves on to the PBMs. Among other things, it alleges that the PBMs misrepresented that they negotiate with Manufacturers and construct formularies to lower the prices of diabetes medications (*id.* ¶¶ 450–51, 457), that their conduct drives prices lower (*id.* ¶ 452), and that their conduct is transparent (*id.* ¶ 453). These alleged misrepresentations are limited to the PBMs—the State does not claim that the Manufacturers had anything to do with them. In fact, the State indicates that many of these supposed misrepresentations occurred in the context of the State and the PBMs negotiating over the rebates of which the State now claims ignorance. (*E.g.*, *id.* ¶¶ 122, 392–94, 424, 457.)

On the basis of these allegations, the State asserts three counts against the Manufacturers. Its primary claim is that the so-called "scheme" violated the MCPA.  It also tacks on two fallback theories that the Manufacturers were unjustly enriched and engaged in civil conspiracy.  (*Id.* ¶¶ 518, 528, 536).

## ARGUMENT

### I.   The Complaint Does Not State A Claim Under The Mississippi Consumer Protection Act.

The MCPA claim against the Manufacturers must be dismissed for at least two independent reasons.[3]  <u>First</u>, the State cannot plead an MCPA violation because its complaint not only fails to identify a single misrepresentation that the Manufacturers allegedly made, but in fact confirms that the Manufacturers accurately reported prices and openly discussed the very information they allegedly concealed.  <u>Second</u>, the MCPA claim fails to satisfy Rule 9(b)'s particularity requirement because the State does not allege any facts concerning the Manufacturers' supposed misrepresentations.

### A.   The Complaint Cannot State An MCPA Claim Because The Manufacturers Never Misrepresented The "Reported Price" Of Their Diabetes Medications.

The State does not allege a plausible MCPA claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).  The MCPA prohibits "unfair or deceptive trade practices in or affecting commerce," and contains a non-exhaustive list of thirteen "practices or acts [that] are … prohibited."  Miss. Code § 75-24-5(1)-(2).  With respect to the Manufacturers, the State invokes only the prohibition on "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have."  *Id.* at § 75-24-

---

[3]   In a concurrently filed motion, the Manufacturers are also moving to dismiss the State's claims for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

5(2)(e).[4]  In an effort to shoehorn the Manufacturers' conduct into this provision, the State claims that they falsely represented the "reported prices" for their diabetes medications.  (3d Am. Compl. ¶ 522.)  But that approach is doubly futile:  The State never identifies any misrepresentation at all—and indeed admits that the Manufacturers reported only accurate information.  In any event, the State further concedes that it has long been aware of (and even has taken advantage of) the challenged rebate practices, meaning that it can hardly now recharacterize these practices as a fraudulent scheme.

First, the relevant MCPA provision addresses only false "representations" about goods and services, and the complaint never identifies any such representation.  Miss. Code. § 75-24-5(2)(e).  In fact, although the Manufacturers flagged this deficiency in their previous motion to dismiss, the operative complaint now *omits* the only prior allegation that attempted to allege any supposedly false representation about the medications (a vague accusation that the Manufacturers represented that prices "resulted from competitive market forces"), likely because the State realized that it had not and could not identify any such representation by any Manufacturer.  (*Compare* 2d Am. Compl. ¶ 435, *with* 3d. Am. Compl. ¶ 522.)  The State is thus left to allege in conclusory fashion that the Manufacturers reported "false list prices" to third-party publishers without identifying a single word that is false or misleading.  (*See, e.g.*, 3d. Am. Compl. ¶¶ 437, 441.)

Nor can it.  The complaint confirms the Manufacturers made no misrepresentations about the prices of the diabetes medications because, as the complaint acknowledges, they *accurately* reported the prices of their diabetes medications.  *See Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 150 (5th Cir. 2010) (dismissing complaint where plaintiff's allegations

---

[4]   The State also claims the PBMs—but not the Manufacturers—violated the MCPA's prohibition on "[m]isrepresentations of fact concerning the reasons for, existence of, or amount of price reductions."  *Id.* § 75-24-5(2)(k).  The complaint alleges no such statements by the Manufacturers.

"suggest the opposite conclusion" as its claim); *Cal Dive Int'l, Inc. v. Schmidt*, 639 F. App'x 214, 218 (5th Cir. 2016) (dismissing claim because the "Complaint itself[ ] contradicts the conclusory assertion that [plaintiff] relied upon [defendant's] material fraudulent misrepresentations") (quotation marks omitted); *Ledesma for Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983, 986 (N.D. Tex. 1993) (plaintiff failed to sufficiently plead claim where pled facts were "in direct contradiction" with its allegation). Here, the only "reported" prices the State identifies are the widely available WAC prices (and the "mathematically-related" Average Wholesale Price ("AWP")). (3d Am. Compl. ¶¶ 301, 437–41). And the State's own allegations show that the Manufacturers reported exactly what they said they were reporting—the list prices of their diabetes medications. Indeed, the complaint asserts that list price "is directly tied to" the actual price wholesalers pay for the Manufacturers' drugs. (3d Am. Compl. ¶¶ 300–03.) And though the WAC does not include rebates (*id.* ¶¶ 372–74), the Manufacturers never claimed otherwise—nor could they, given that federal law would have prohibited them from "including prompt pay or other *discounts, rebates or reductions*" in the reported WAC price. 42 U.S.C. § 1395w-3a(c)(6)(B) (emphasis added). The State has thus pleaded itself out of court: The Manufacturers cannot be liable for making a misrepresentation if the "reported" list price was indeed the "true" list price.

*Washington County Board of Education v. Mallinckrodt ARD, Inc.*, is instructive. 431 F. Supp. 3d 698 (D. Md. 2020). There, the court dismissed consumer protection claims brought by a plaintiff that—like the State here—alleged that a pharmaceutical company engaged in "unfair or deceptive trade practices" under an analogous consumer protection statute by (1) setting "artificial" and "inflated" wholesale prices that misrepresented the drug's "true and actual price" and (2) misrepresenting the role of discounts offered by PBMs. *Id.* at 710, 712. The court remarked that, while a plaintiff may allege that a defendant's prices were "extraordinarily high,"

"unethical," or "even the result of unlawful anticompetitive conduct," such allegations "cannot serve as the basis of" a claim under the consumer protection statute because the reported price "reflect[ed] the price of the drug" and "there [were] no allegations in the complaint suggesting the [reported prices] were themselves deceptive." *Id*. at 712–13 (contrasting a case where alleged "schemes were ultimately actionable as misrepresentations under consumer protection statutes not because the [prices] were high, but because the [prices] were so much higher than the acquisition costs, that the [prices] did not reflect the price of the drug").

This Court should dismiss the MCPA claim against the Manufacturers for the same reason. Although the State may believe the list prices of medications are high and the result of an alleged "scheme," it does not allege—because it cannot—that the reported prices do not "reflect the price of the drug." This failure to allege a false statement is fatal to its claim. *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (dismissing complaint because the plaintiff "d[id] not allege that [the defendants] made any false representations"); *Garziano v. Louisiana Log Home Co., Inc.*, 569 F. App'x 292, 297 (5th Cir. 2014) (affirming summary judgment on MCPA claim where plaintiff "failed to proffer any evidence of statements that were materially misleading"); *In re Winstead*, 605 B.R. 432, 441 (S.D. Miss. Bankr. 2019) (dismissing complaint because "the Complaint suggest[ed] the Defendants made 'materially false statements' without any factual allegations to prove or indicate what statements upon which the allegations rely"); *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 456–61 (D. Md. 2014) (dismissing Maryland Consumer Protection Act claim alleging deceptive prices where "plaintiff [did] not allege any affirmative misrepresentations made by defendants").

The State tries to overcome this deficiency by jettisoning the MCPA's express requirement of a "representation." Rather than pointing to anything false that the Manufacturers actually said,

the complaint simply claims that the Manufacturers "knew" their WAC prices were "untethered from the actual prices that Defendants were paid for the drugs" (*id.* ¶ 435), "knew" that the prices "were not based upon transparent or competitive factors," (*id.* ¶ 440), and "[d]espite this knowledge," reported list prices to third parties (*id.* ¶¶ 437–38).  But "knowing" something is different than making a "representation" about the "characteristics" of diabetes medications, and the relevant MCPA section prohibits only "*representing* that goods or services have … characteristics …. that they do not have."  Miss. Code § 75-24-5(2)(e) (emphasis added); *accord Byrd v. Paw Paw's Camper City, Inc.*, 967 So. 2d. 1251, 1253 (Ct. App. Miss. 2007) (holding that defendant was not required to disclose prior damage of vehicle under § 75-24-5(2)(f)-(g) because representations were accurate).  Nor does the State identify any obligation, duty, or requirement— in the MCPA or otherwise—that required the Manufacturers to disclose this purported knowledge. *See Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007) ("In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted.").  The allegation that the Manufacturers "knew" certain facts is thus insufficient as a matter of law to overcome the State's failure to allege a misrepresentation.

Second, and independently, the State cannot claim to have been misled by the interaction of rebates and the "reported prices" of the medications because that information was openly available to the State.  According to the complaint, the Manufacturers participated in the purported "Insulin Pricing Scheme" when they "inflated their list prices," "pa[id] larger and larger amounts of Manufacturer Payments back to the PBMs," and secured access to "[PBMs'] standard formularies" in exchange for rebates.  (3d Am. Compl. ¶¶ 358–59.)  But again, according to the complaint's own allegations, all of this was well known.  The Manufacturers publicly disclose increases to their list prices.  (*Id.* ¶¶ 282–86, 293–96, 301, 372) (summarizing "reported prices" of

several drugs over *multiple decades*).)  They also publicly disclose that they pay rebates.  (*Id.* ¶ 372 ("Novo Nordisk's President … explained … [']we've been participating in that system because the higher the [reported] price, the higher the rebate [and] [w]e spend almost $18 billion in rebates in 2018.[']") (emphasis omitted), ¶ 373 ("Senior Vice President of Eli Lilly testified:  Seventy-five percent of our [reported] price is paid for rebates and discounts to secure [formulary position]."), ¶ 374 ("Executive Vice President for External Affairs of Sanofi, testified:  The rebates are how the system has evolved.").)  And they publicly acknowledge that rebates are necessary to secure formulary access.  (*Id.* ¶ 356 ("Sanofi's Chief Executive Officer … stressed … if we were not included in CVS Caremark's standard formulary we wouldn't have access to those 15 million lives.") (brackets omitted).)

The State is aware of all of this.  It admits that payors—including the State itself, no less—enter into contracts with PBMs to receive "all or some" of the Manufacturers' rebates, and that it "relie[d] on PBMs as administrative agents" with the objective of having the "rebates" negotiated by PBMs result in cost-savings.  (*Id.* ¶¶ 35, 122, 186–187, 199, 229, 392, 424–31, 457).  Moreover, federal law not only recognizes that rebates exist and mandates their exclusion from WAC, 42 U.S.C. § 1395w-3a(c)(6)(B), but in certain circumstances also requires manufacturers to "enter[] into and have in effect a rebate agreement … *on behalf of States*," *id.* § 1396r-8(a)(1) (emphasis added).  The State thus has no basis to claim that the Manufacturers misled it while also admitting that it was aware of the practices the Manufacturers supposedly concealed.  *See Skinner v. USAble Life*, 200 F. Supp. 2d 636, 641 (S.D. Miss. 2001) (holding plaintiff could not recover for alleged misrepresentations where plaintiff had documents outlining correct information); *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 861–63 (S.D. Miss. 1990) (rejecting MCPA claim

where plaintiffs had accurate information concerning insurance policy and were "simply dissatisfied with the coverage actually provided under the contract").

It is also clear that the State is aware that this knowledge dooms its claims.  That is presumably why the State, in its most recent amendment, tried to eliminate some of the blatant concessions that the Manufacturers cited in their prior motion to dismiss.  (*E.g.*, ECF No. 39 at 9–10, 11–12).  Gone, for example, is the allegation—presumably true, given that this information is in the State's possession—that the State "negotiated somewhere between a 15%–18% discount off the reported price for every brand drug purchased."  (2d Am. Compl. ¶ 397).  But this revisionism gets the State nowhere:  As described above, the current complaint still demonstrates the State's awareness of rebates and pharmaceutical pricing.  (*E.g.*, 3d Am. Compl. ¶¶ 35, 122, 186–187, 199, 229, 392, 424–31, 457).

### B.   The MCPA Claim Also Fails Because the State Does Not Allege Fraud with Particularity.

The MCPA claim independently fails because the complaint does not plead the purported fraud with the particularity Rule 9(b) requires.  Rule 9(b) applies to any claim that *sounds* in fraud, not just "claims of fraud."  *See Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001) ("Rule 9(b) looks beyond how the plaintiff phrases his or her complaint, and applies 'to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.'") (citation omitted); *Michael v. Boutwell*, 2015 WL 728516, at *5 (N.D. Miss. Feb. 19, 2015) ("[I]t is allegations of fraud, not claims of fraud, to which Rule 9(b) applies.  Accordingly, whether the rule applies will depend on the plaintiffs' factual allegations." (citation and quotation marks omitted)).  This includes MPCA claims premised on alleged misrepresentations.  *See Young v. Bristol-Myers Squibb Co*, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017); *see also Mayberry v. Bristol-Meyers Squibb Co.*, 2009 WL 5216968, at *7 (D.N.J.

Dec. 30, 2009) (applying Rule 9(b) to MCPA claims).   And here, the complaint rests upon allegations that the Manufacturers participated in a vast "Insulin Pricing Scheme"—which the State previously called "fraudulent," and now labels "false" and "deceptive"—by supposedly making misrepresentations related to prices.  (*Compare* 3d Am. Compl. ¶¶ 12, 25, 234, 363, 408, 492, 522, 532, 534, 546, *with* 2d Am. Compl. ¶¶ 12, 24, 188, 308, 352, 405, 435, 532.)

The complaint does not meet Rule 9(b)'s heightened standard.  The Fifth Circuit applies Rule 9(b) with "bite" and "without apology."  *Williams v. WMX Techs.*, *Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (Fifth Circuit "precedent interprets Rule 9(b) strictly").  To survive a motion to dismiss, a plaintiff must allege the "who, what, when, where, and how" of the alleged fraud or misrepresentation.  *U.S. ex rel. Doe v. Dow Chem. Co*., 343 F.3d 325, 328 (5th Cir. 2003) (citation omitted).  The complaint's allegations fall well short.

The State alleges that "Defendants reported and published false prices for each at-issue drug and in doing so represented that the reported prices were the actual, legal and fair-market prices for these drugs."  (3d Am. Compl. ¶ 522.)  The complaint's only support for this claim, however, is in the brief section addressing the Manufacturers (*id.* ¶¶ 433–45), which alleges in broad strokes that the Manufacturers caused to be published (admittedly accurate) list "prices in Mississippi of $300–$400" "through publishing compendia and in various promotional and marketing materials" (*id.* ¶¶ 437, 441).  Even beyond the fundamental problem that these claims, by the State's own concession, allege only the communication of a list price that was indisputably the *actual* list price, *see* pp. 8–10, *supra*, these cursory allegations about price ranges and "various" publications wholly fail to specify:  (1) who made any alleged false statements in Mississippi about the list price of diabetes medications; (2) what supposedly false statements each (or any)

Manufacturer made to the State or to a specific Mississippian; (3) where any particular false statement was actually made; (4) when any misrepresentation was made; or (5) how any alleged statement was supposedly false.

That is the paradigm of inadequate pleading under Rule 9(b). As courts in this Circuit have routinely held, "[a]t a minimum," plaintiffs must specify "the particulars of 'time, place, and contents of the false representations.'" *Williams*, 112 F.3d at 179 (citation omitted); *see BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 WL 642304, at *2 (S.D. Miss. Feb. 27, 2012) (dismissing where plaintiff failed to identify the speaker and when or where misrepresentations were made); *M St. Invs., Inc. v. Zurich Am. Ins. Co.*, 2014 WL 1326105, at *4 (S.D. Miss. Mar. 28, 2014) (dismissing where plaintiff "failed to set forth the 'who, what, when, where and how' relative to the defendants' alleged fraudulent behavior"). Thus, because the complaint's "wholly generalized allegations" of fraud "do not 'alleg[e] *particular* details of a scheme,'" they are insufficient under Rule 9(b). *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013) (affirming dismissal under Rule 9(b)) (citation omitted); *see also Shushany v. Allwaste, Inc.*, 992 F.2d 517, 523–24 (5th Cir. 1993) (affirming dismissal under Rule 9(b) where "[t]he complaint provide[d] only conclusory allegations").

Further compounding this failure to comply with Rule 9(b), the State alleges misrepresentations by all Manufacturers as a group, failing to allege anything about *each* Manufacturer's specific statements or conduct. But "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (citation omitted); *see also U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008) (affirming dismissal of complaint that made "broad claims against

15

numerous defendants without identifying specific actions of specific individuals at specific times"); *Lewis v. Miss. Farm Bureau Mut. Ins. Co.*, 2007 WL 2122469, at *4 (S.D. Miss. July 20, 2007) (dismissing claims under Rule 9(b) where complaint "generically lumped the Defendants together without identifying who allegedly said what").

Here, the complaint aggregates the Manufacturers—three independent competitors— together, making no effort to differentiate among them, their products, or their alleged representations. (*E.g.*, 3d Am. Compl. ¶¶ 433–45, 522 ("The Manufacturer and PBM Defendants knew that the artificially inflated list prices generated by the Insulin Pricing Scheme were false and completely untethered from the actual prices that Defendants were paid for the drugs").) Indeed, the 13 paragraphs the State devotes to the Manufacturers' supposed "deceit" do not identify a *single Manufacturer* by name—and even sometimes lump in the PBMs with the Manufacturers. (*Id.* ¶¶ 433–45.) This improper collective pleading underscores the State's inability to make particular allegations of fraud given that elsewhere the State purports to identify Manufacturer-specific statements that do *not* involve misconduct—but instead involve disclosure of the very information the State now claims was concealed. (*E.g.*, *id.* ¶¶ 282–86 (drug-specific price charts); ¶¶ 372–74 (manufacturer-specific testimony).) Rule 9(b) demands far more.

## II.     The State Cannot Recover Compensatory or Punitive Damages Under the MCPA.

The State's request for compensatory and punitive damages fails as a matter of law, even if its MCPA claim were valid. The section of the MCPA authorizing suits for compensatory damages—which is entitled, in relevant part, "Private Actions"— provides that "any *person* who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result of [a MCPA violation] ... may bring an action at law ... to recover such loss of money or damages." Miss. Code § 75-24-15(1) (emphasis added). The Mississippi Supreme Court has held that public actions by the

State—the "sole Plaintiff in this action" (3d Am. Compl. ¶ 39)—do not fall under this section. *Watson Laboratories, Inc. v. Mississippi*, 241 So. 3d 573, 592 (Miss. 2018).   As the Court explained when denying compensatory damages in that case, which was also brought by the Attorney General, the "State fails to explain how, in a section titled 'Private Actions,' it could bring a public action, which is not authorized or contemplated under [Section 75-24-15]."  *Id*.  The Court therefore dismissed the compensatory damages claim, as this Court should do, too.

The request for punitive damages fares even worse.  Not only is an award of compensatory damages a predicate for punitive damages, Miss. Code § 11-1-65(1)(c), but Mississippi law also requires that a plaintiff seeking punitive damages adequately plead that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code § 11-1-65(1)(a).  This standard is satisfied only "in the most egregious cases" where "the facts are highly unusual and the cases extreme." *Wise v. Valley Bank*, 861 So. 2d 1029, 1034–35 (Miss. 2003).  The complaint alleges nothing like that, nor does it identify any facts to support such a claim.  Instead, it merely offers the single conclusory statement that the Manufacturers acted "in a willful, wanton or reckless disregard for the safety of others."  (3d Am. Compl. ¶ 524.)  That is insufficient under settled law.  *See Crechale v. Carroll Fulmer Logistics Corp.*, 2020 WL 4927508, at *4–5 (S.D. Miss. Aug. 21, 2020) (dismissing punitive damages claim where plaintiff failed to plead "extraordinary, egregious facts" to show willful, wanton, or reckless disregard); *Affordable Care, LLC v. JNM Off. Prop., LLC*, 2020 WL 3453746, at *2 (S.D. Miss. June 24, 2020) (dismissing punitive damages claim that "contain[ed] merely a 'formulaic recitation' of the elements of a punitive damages claim"); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996) ("[R]ote conclusory

allegations that the defendants 'knowingly did this' or 'recklessly did that' fail to meet the heightened pleading requirements of Rule 9(b).").

### III.     The Unjust Enrichment Claim Fails.

Unjust enrichment is not an independent theory of recovery under Mississippi law.  As "this Court has recognized" in the past, "unjust enrichment is considered to be a remedy."  *Mosley v. GEICO Ins. Co.*, 2014 WL 7882149, at \*5 (S.D. Miss. Dec. 16, 2014).  A court thus will allow a request for recovery under an unjust enrichment theory to proceed only if the plaintiff also adequately alleges a separate, underlying wrong.  *See Cole v. Chevron USA*, Inc., 554 F. Supp. 2d 655, 673 (S.D. Miss. 2007) (dismissing unjust enrichment claim where there was no "legally cognizable predicate claim"); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004) ("in the absence of a showing of wrongdoing, the plaintiff's cause is not unjust enrichment").  The State's unjust enrichment claim necessarily falls with its MCPA claim.

Independently, the State does not allege that any Manufacturer received any benefit from the State or its citizens, let alone unjustly.  Where a plaintiff has "paid [the defendant] nothing," the defendant has not "retain[ed] any money or property that should rightfully be [the plaintiff's]," and so an unjust enrichment theory must be dismissed.  *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005); *see also Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92–93 (Miss. 1992) ("The mere fact that a third person … benefits from an arrangement between two other persons … does not make such third person liable in quasi contract, unjust enrichment, or restitution.").

That failure is dispositive here.  The State claims that the Manufacturers retained benefits "in the form of amounts paid for diabetes medications and fees and payments collected based on the prices generated by the Insulin Pricing Scheme."  (3d Am. Compl. ¶ 530.)  But the allegations in its complaint show the opposite.  As the State concedes, it does not purchase medications from any Manufacturer.  (*Id.* ¶¶ 122, 186–187, 199, 229, 299, 421–31, 478.)  The complaint further

makes clear that the Manufacturers do not have any direct relationship or agreement with other health plans or consumers.  (*Id.* ¶¶ 299–300, 309, 313–14.)  As a result, neither the State nor its citizens ever conferred on the Manufacturers the benefit of "amounts paid for diabetes medications" or any other "fees and payments."  (*Id.* ¶¶ 530.)  *See, e.g.*, *Langham v. Behnen*, 39 So. 3d 970, 976 (Miss. Ct. App. 2010) (holding unjust enrichment inapplicable where plaintiff had no agreement with the defendant but instead contracted with a third party).  The State's own allegations eliminate any basis for an unjust enrichment remedy.

Finally, this theory is also untenable because "[u]njust enrichment only applies to situations where there is no legal contract."  *Powell*, 912 So. 2d at 982.  Yet here, the complaint makes clear that the State (and other payors) have entered into contracts with PBMs that expressly address the rebates underlying the supposed "scheme"—and indeed that the State has sought to take advantage of these rebates.  (*E.g.*, 3d Am. Compl. ¶¶ 362, 391-93, 424-25, 457 ("Over time, payors have secured contract provisions guaranteeing them all or some portion of the 'rebates'"); *supra*, at 11–13).  Thus, as the Southern District of Texas recently explained in dismissing similar allegations of an insulin-pricing scheme, the State cannot use unjust enrichment to revisit contractual terms and "object[] to [an] artificially inflated price that [it] paid."  *Harris Cnty., Texas v. Eli Lilly & Co.*, 2022 WL 479943, at *14 (Feb. 16, 2022) (collecting cases); *see also* Note 1, *supra*.

The State's efforts to plead around this problem only underscore the point.  For example, the State protests that these contracts do not function "on an individual drug basis" (*id.* ¶ 534)—but that carefully worded allegation only confirms the existence of contracts that cover rebates and insulin medications (even if they also cover other subjects as well).  Even less persuasive is the State's backstop contention that its "claims do not arise out of a contract, but rather are based on the larger false and deceptive scheme."  (*Id.*)  Again, the critical question is whether there is "*no*

legal contract," *Powell*, 912 So. 2d at 982 (emphasis added), and not whether the plaintiff alleges some backdrop "scheme" that supposedly affected prices paid under a contract that admittedly exists, *see Harris Cnty.*, 2022 WL 479942, at *14 (noting that this rule can bar "price-fixing claims"). Once again, the State has pleaded itself out of court.

## IV.   The Complaint Fails To State A Claim Of Civil Conspiracy.

The civil conspiracy claim fares no better, for two reasons. <u>First</u>, like unjust enrichment claims, civil conspiracy claims are not "separately actionable" and instead require a viable underlying tort. *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002). As a result, the State's claims for civil conspiracy cannot survive without an adequately pleaded MCPA claim. *Id.* (collecting cases supporting this rule that "[are], in fact, legion"); *see also Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 739 (5th Cir. 2015) ("Mississippi follows the rule of almost all jurisdictions in uniformly requiring that civil conspiracy claims be predicated upon an underlying tort that would be independently actionable." (citation omitted)). Indeed, the Mississippi Supreme Court addressed this exact issue in another suit brought by the Attorney General, holding that "[b]ecause the State's statutory claims d[id] not survive Rule 12(b)(6), its civil-conspiracy claim based solely on these alleged statutory violations [could not] either." *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1190 (Miss. 2020). The same result is required here.

<u>Second</u>, the civil conspiracy claim independently fails because the State does not adequately allege an agreement or common purpose to violate the MCPA. "Under Mississippi law, [a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quotation marks omitted) (a civil conspiracy requires "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object

20

or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result"). Where a plaintiff has not "alleged any set of facts upon which any agreement of the defendants to accomplish an unlawful purpose may be found," dismissal is required. *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. Ct. App. 2013) ("It is elementary that a conspiracy requires an agreement between the co-conspirators." (citation omitted)).

The complaint here does not allege any such facts, let alone do so with the particularity required for allegations that sound in fraud. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (Plaintiffs must "plead with particularity the conspiracy as well as the overt acts … taken in furtherance of the conspiracy" (citation omitted)).  Despite basing its underlying MCPA claim on supposed misrepresentations, the best support the State can offer is conclusory allegations that "the Insulin Pricing Scheme is a coordinated effort between the Manufacturer and PBM Defendants"; that there were "explicit agreements between the Defendants"; and that various defendants held "private" meetings that "appear to have included" wholly-unspecified "discussions in furtherance of the … Scheme."  (3d Am. Compl. ¶¶ 96, 139, 343, 364, 545.)  The complaint is thus devoid of any allegation that the Manufacturers and PBMs actually *agreed* to make any alleged misrepresentations in violation of the MCPA.  (*Id.* ¶¶ 433–75.)  Regardless, once stripped of conclusory rhetoric, the allegations of an "agreement" amount to nothing beyond the assertion that the Manufacturers "inflated their list prices" and paid "larger and larger" rebates to the PBMs in exchange for "status on [PBM] standard formularies."  (*Id.* ¶¶ 358–59.)  But, as explained above, there is nothing illegal about paying rebates—and indeed federal law permits and recognizes that manufacturers both pay rebates to PBMs and exclude such rebates from their WAC prices.  *See* 42 U.S.C. § 1395w-3a(c)(6)(B).

The State has not alleged an unlawful agreement involving the Manufacturers, and its civil conspiracy claim must therefore be dismissed. *See Alston v. Mississippi Dep't of Emp. Sec.*, 300 So. 3d 543, 547 (Miss. Ct. App. 2020) (dismissing a civil conspiracy claim where the plaintiff "d[id] not set forth any specific facts that would substantiate an agreement between [defendants]"); *Palmisano v. Mississippi Dep't of Wildlife, Fisheries, & Parks*, 2015 WL 1925466, at *2 (S.D. Miss. Apr. 28, 2015) (granting a motion to dismiss on a civil conspiracy claim where "Plaintiffs alleged no specific facts indicating an agreement or meeting of the minds between Defendants"); *BC's Heating & Air & Sheet Metal Works, Inc.*, 2012 WL 642304, at *6 (same).

## CONCLUSION

The Manufacturers respectfully request that the Court dismiss all claims against them with prejudice.

Dated:  March 21, 2022                              Respectfully submitted,


                                                    /s/ Robert L. Gibbs
                                                    Robert L. Gibbs, MSB No. 4816
                                                    GIBBS TRAVIS PLLC
                                                    210 East Capitol Street, Suite 1801
                                                    Jackson, MS 39201
                                                    Telephone: +1 601 487 2631
                                                    Facsimile: +1 601 366 4295
                                                    Email:  rgibbs@gibbstravis.com

                                                    James F. Hurst, P.C. (admitted PHV)
                                                    Andrew A. Kassof, P.C. (admitted PHV)
                                                    Diana M. Watral, P.C. (admitted PHV)
                                                    Ryan J. Moorman (admitted PHV)
                                                    KIRKLAND & ELLIS LLP
                                                    300 North LaSalle
                                                    Chicago, IL 60654
                                                    Telephone: +1 312 862 2000
                                                    Facsimile: +1 312 862 2200
                                                    Email:  james.hurst@kirkland.com
                                                    Email:  akassof@kirkland.com
                                                    Email:  diana.watral@kirkland.com
                                                    Email:  ryan.moorman@kirkland.com

                                                    *Attorneys for Eli Lilly And Company*

                                                    Phillip S. Sykes, MSB #10126
                                                    P. Ryan Beckett, MSB #99524
                                                    Christopher D. Morris, MSB #102981
                                                    BUTLER SNOW LLP
                                                    1020 Highland Colony Parkway, Suite 1400
                                                    Post Office Box 6010
                                                    Ridgeland, Mississippi 39158-6010
                                                    (P)(601) 948-5711
                                                    (F)(601) 985-4500
                                                    (E) chris.morris@butlersnow.com

                                                    Neal A. Potischman (admitted PHV)
                                                    Andrew Yaphe (admitted PHV)
                                                    Davis Polk & Wardwell LLP
                                                    1600 El Camino Real
                                                    Menlo Park, CA  94025
                                                    (P) 650-752-2000
                                                    (F) 650-752-2111

Neal.potischman@davispolk.com
Andrew.yaphe@davispolk.com

David B. Toscano (admitted PHV)
James P. Rouhandeh (admitted PHV)
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017
(P) 212-450-4515
David.toscano@davispolk.com
rouhandeh@davispolk.com

*Attorneys for Novo Nordisk Inc.*

R. David Kaufman, MSB No. 3526
M. Patrick McDowell, MSB No. 9746
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
P.O. Drawer 119
Jackson, MS 39205
Telephone: +1 601-948-3101
Facsimile: +1 601-960-6902
Email: dkaufman@brunini.com
Email: pmcdowell@brunini.com

Shirlethia V. Franklin, MSB No. 102924
William D. Coglianese (admitted PHV)
Theresa M. Martin (admitted PHV)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: +1 202-879-3892
Facsimile: +1 202-626-1700
Email: sfranklin@jonesday.com

*Attorneys for Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

I, Robert L. Gibbs, do hereby certify that on March 21, 2022, a true and accurate copy of the foregoing was duly served upon all known counsel of record and upon all parties registered with the Court's electronic filing system by operation of the Court's CM/ECF system.

/s/Robert L. Gibbs
Robert L. Gibbs