**IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI, EX REL. LYNN FITCH , ATTORNEY GENERAL<br><br>*Plaintiff,*<br><br>v.<br><br>ELI LILLY AND COMPANY, *et al.*<br><br>*Defendants.* | Civil Action No. 3:21-CV00674-KHJ-MTP<br><br>**ORAL ARGUMENT REQUESTED** |

**PBM DEFENDANTS' REBUTTAL MEMORANDUM FURTHER SUPPORTING THEIR
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT FOR FAILURE TO
<u>STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................ 1

    I.    THE STATE HAS NOT ALLEGED A VIOLATION OF MCPA. ...................... 1

        A.    The State has not pleaded a viable "Unfair Trade Practices" claim. ......... 1

        B.    The State's Deceptive Trade Practices Claim fails. ................................... 2

            1.    Rule 9(b) applies to the MCPA claims. ......................................... 2

            2.    Referring to Manufacturers' published list prices is not a deceptive trade practice. ................................................................ 3

            3.    Subjective opinions and generalized aspirational statements are not actionable under the MCPA. ............................................... 4

            4.    The State cannot identify a single material misrepresentation pleaded with particularity. ............................... 5

                a.    Allegations regarding specific dollars and percentages ............................................................................ 5

                b.    Allegations related to how PBMs affect insulin prices ................................................................................... 6

                c.    Allegations regarding direct representations to the State ................................................................................... 6

        C.    The State has not alleged facts showing that it satisfied the requirements of Miss. Code Ann. § 75-24-15 ........................................... 7

    II.    THE STATE'S DERIVATIVE CONSPIRACY CLAIM IS DEFICIENT. .......... 7

    III.    THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM. ................................................................................................................ 9

    IV.    THE STATE'S CLAIM FOR UNLIMITED TIME TO PURSUE ITS CLAIMS SHOULD BE REJECTED ................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alston v. Miss. Dep't of Emp. Sec.*,
    300 So. 3d 543 (Miss. Ct. App. 2020) ..........................................................................7

*Anderson Dunham, Inc. v. Aiken*,
    133 So. 2d 527 (Miss. 1961) ..........................................................................................3

*Archer v. Nissan Motor Acceptance Corp.*,
    550 F.3d 506 (5th Cir. 2008) .........................................................................................4

*Beasley v. Sutton*,
    192 So. 3d 325 (Miss. Ct. App. 2015) .........................................................................10

*Braswell v. Vinson Guard Serv.*,
    2018 WL 3148118 (S.D. Miss. June 27, 2018) .............................................................1

*In the Matter of Cliffdale Assocs., Inc.*,
    103 F.T.C. 110, *available at* 1984 WL 565319 (F.T.C. 1984) .....................................4

*In re Direct Purchaser Insulin Pricing Litig.*,
    2021 WL 2886216 (D.N.J. July 9, 2021) .......................................................................4

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997) .......................................................................................6

*Franklin v. Franklin ex rel. Phillips*,
    858 So. 2d 110 (Miss. 2003) ..........................................................................................9

*Gallegos v. Mid-S. Mortg. & Inv., Inc.*,
    956 So. 2d 1055 (Miss. Ct. App. 2007) .........................................................................3

*Goode v. City of Southaven*,
    2019 WL 3082735 (N.D. Miss May 1, 2019) ................................................................8

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .........................................................................9

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .........................................................................................7

*Hernandez v. Ciba-Geigy Corp.*,
    200 F.R.D. 285 (S.D. Tex. 2001) ...................................................................................2

*Hoffman v. L & M Arts*,
  838 F.3d 568 (5th Cir. 2016) ....................................................................................................5

*Litovich v. Bank of Am. Corp.*,
  2021 WL 4952034 (S.D.N.Y. Oct. 25, 2021) ...........................................................................8

*Macke v. Am. Gen. Life Ins. Co.*,
  2016 WL 83875 (S.D. Miss. Jan. 7, 2016) ...............................................................................5

*Memphis Hardwood Flooring Co. v. Daniel*,
  771 So. 2d 924 (Miss. 2000) ....................................................................................................3

*Michael v. Boutwell*,
  2015 WL 728516 (N.D. Miss. Feb. 19, 2015) .........................................................................2

*In re Mobile Telecomm. Techs. Corp. Sec. Litig.*,
  915 F. Supp. 828 (S.D. Miss. 1995) .........................................................................................5

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021) ...........................................................................................10

*Omnibank of Mantee v. United S. Bank*,
  607 So. 2d 76 (Miss. 1992) ................................................................................................8, 10

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
  997 F. Supp. 2d 526 (N.D. Tex. 2014) .....................................................................................8

*Taylor Made Smiles, PLLC v. Franklin Collection Serv., Inc.*,
  224 So. 3d 565 (Miss. Ct. App. 2017) ...................................................................................10

*Thomas v. Miss. Valley Gas Co.*,
  113 So. 2d 535 (Miss. 1959) ....................................................................................................4

*Union Nat'l Life Ins. Co. v. Crosby*,
  870 So. 2d 1175 (Miss. 2004) ................................................................................................10

*Watson Labs., Inc. v. Mississippi*,
  241 So.3d 573 (2018) ...........................................................................................................4, 7

*White v. Hancock Bank*,
  477 So. 2d 265 (Miss. 1985) ....................................................................................................4

*Young v. Bristol-Myers Squibb Co.*,
  2017 WL 706320 (N.D. Miss. Feb. 22, 2017) .........................................................................3

**Statutes**

Miss. Code Ann. § 75-24-3(c) ........................................................................................................4

Miss. Code Ann. § 75-24-15 ............................................................................................... 7

Miss. Code Ann. § 75-24-15(2) ........................................................................................... 7

**Other Authorities**

fraud, Black's Law Dictionary (11th ed. 2019) ................................................................... 2

fraud, Merriam-Webster Dictionary (Online edition 2022) ................................................ 2

Despite pages and pages of allegations and argument in its Third Amended Complaint (ECF No. 71) and memorandum in opposition (ECF No. 96), the State of Mississippi has not stated a viable claim against PBMs CVS Caremark, Express Scripts, and OptumRx. The Third Amended Complaint ("TAC") should be dismissed with prejudice.

## ARGUMENT

### I.  THE STATE HAS NOT ALLEGED A VIOLATION OF MCPA.

#### A.  The State has not pleaded a viable "Unfair Trade Practices" claim.

The State's argument that it pleaded an "unfair trade practices" claim against the PBMs distinct from its "deceptive trade practices" claim finds no support in the Complaint.

In the State's own words, "the root" of its 123-page, 551-paragraph TAC is a "false and deceptive conspiracy." TAC ¶ 12. In contrast, the State uses the word "unfair" exactly twice. Not until Paragraph 521 does the State even mention the word, and then only to parrot the MCPA's text. *Id*. ¶ 521. Paragraph 523 is the only paragraph that attempts to explain the supposed "unfair trade practices claim," but it does not mention PBMs. *See id*. ¶ 523 (alleging facts specific to Manufacturer Defendants). And many of the paragraphs that the State cites as supporting a distinct "unfairness" claims (*see* Pl. Opp'n at 10 (citing TAC ¶¶ 446–73)) appear in a section of the Complaint titled "PBM Defendants *Deceived* the State and Mississippi Diabetics." TAC ¶¶ 446–475 (emphasis added). The bottom line: The State cannot bury a secret "claim" in a massive complaint filled with irrelevant allegations, attempt to elaborate and expand on that hidden "claim" in an opposition to a motion to dismiss, and then insist that the PBMs waived their right to attack the validity of a liability theory the State never presented. *See, e.g.*, *Braswell v. Vinson Guard Serv.*, 2018 WL 3148118, at *2 (S.D. Miss. June 27, 2018) ("New factual allegations presented in a plaintiff's opposition to a motion to dismiss . . . are insufficient to cure deficient allegations in a complaint.") (quoting *Tanner v. Pfizer, Inc.*, 2015 WL 6133207, at *4 (S.D. Miss. Oct. 19, 2015)).

Even if the Complaint contained a distinct "unfair" trade practices claim, Defendants did not "waive" their challenge to that claim. In moving to dismiss, the PBMs argued that the State's "alleged misrepresentations fall outside the scope of the MCPA," which encompasses the State's entire claim under the MCPA. PBM Mem. at 15. The PBMs even quoted the relevant portion of the MCPA that dealt with unfair and deceptive trade practices. *Id.* As previously explained, the State's allegations do not even meet the definition of "trade," which would apply equally to a claim of "deceptive" or "unfair" "trade practices." *Id.* at 15–16.

### B. The State's Deceptive Trade Practices Claim fails.

#### 1. Rule 9(b) applies to the MCPA claims.

In its Second Amended Complaint, the State insisted that a "fraudulent conspiracy" was the "root" of its claims. ECF No. 20 ¶ 12. In a transparent effort to avoid Rule 9(b), the State changed "fraudulent" to "false and deceptive" in that allegation (as if those words mean different things). TAC ¶ 12; *but see id.* ¶ 545 (alleging a "fraudulent conspiracy"). The State cannot nullify the particularity requirement by wordplay.

Rule 9(b) applies "to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Hernandez v. Ciba-Geigy Corp.*, 200 F.R.D. 285, 291 (S.D. Tex. 2001). "[I]t is allegations of fraud, not claims of fraud, to which Rule 9(b) applies." *Michael v. Boutwell*, 2015 WL 728516, at *5 (N.D. Miss. Feb. 19, 2015).

Although it tries to avoid using the magic word, the State alleges fraud throughout its pleading. The State makes repeated allegations of "deception" and "deceptive" conduct. *See* TAC ¶¶ 12, 234, 468, 471, 521–522, 532, 534, and 546. Fraud and deceit are synonyms—both in the legal sense and in the common vernacular. Fraud, Black's Law Dictionary (11th ed. 2019) ("Fraud has been defined to be, any kind of artifice by which another is deceived."); fraud, Merriam-Webster Dictionary (Online edition 2022) ("DECEIT, TRICKERY" or "an act of deceiving or

2

misrepresenting"). And Mississippi courts refer to "fraud and deceit" as a single cause of action. *Memphis Hardwood Flooring Co. v. Daniel*, 771 So. 2d 924, 931 (Miss. 2000) ("Actions for the recovery of damages for fraud and deceit are usually based upon misrepresentations which amount to fraud"); *Anderson Dunham, Inc. v. Aiken*, 133 So. 2d 527, 529 (Miss. 1961).

If that were not enough, the State alleges repeatedly that Defendants made "misrepresentations" in violation of Mississippi law. *See* TAC ¶¶ 122, 436, 443, 450, 452–453, 457, 522. Under Mississippi law, fraud and intentional misrepresentation are one and the same. *Gallegos v. Mid-S. Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1059 (Miss. Ct. App. 2007) ("The elements of intentional misrepresentation are identical to the elements of fraud.").

Rule 9(b) required the State to plead its MCPA claim sounding in fraud with particularity. *See Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320, at *15 (N.D. Miss. Feb. 22, 2017) (applying Rule 9(b) to MCPA allegations that turned on "'fraudulent or deceptive' behavior").

### 2. Referring to Manufacturers' published list prices is not a deceptive trade practice.

The State string-cites cases in which courts have declined to dismiss claims against *manufacturers* of insulin for allegedly publishing "artificially inflated prices." Pl. Opp'n at 12. As the State recognizes, the Manufacturers set and report the Wholesale Acquisition Cost (WAC) that the State refers to as the "list price." *See* TAC ¶¶ 301–02, 437–38. PBMs have no role in either setting or publishing the "list price" of any medication. *See, e.g.*, *id.* ¶ 368 (EVP of Novo Nordisk explaining that "I will tell you that at Novo Nordisk we are accountable for the [reported] prices of our medicines").

Without elaboration, the State argues that courts have found Defendants liable for "utilizing" allegedly inflated list prices. Pl. Opp'n at 12–13. But the PBMs were not parties in most of the cited cases. *Id.* at 12. Only in one of the cited cases were the PBMs defendants, but

3

there, no defendant has been found liable for using list prices and the PBMs are not even alleged to be liable for the Manufacturer's publishing of list prices. *In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216, at *15 (D.N.J. July 9, 2021). As for the State's reliance on *Harris County v. Eli Lilly & Co.*, Pl. Opp'n at 12, the *Harris County* court has now dismissed all claims with prejudice against both the PBM and Manufacturer Defendants, and the County abandoned its claims and did not appeal. *See* Order, *Harris Cnty. v. Eli Lily & Co.*, Case No. 4:19-cv-04994 (S.D. Tex. Mar. 16, 2022), Dkt. No. 187. As a matter of law, the PBMs cannot face MCPA liability premised on list prices they had no role in setting or publishing.

### 3. Subjective opinions and generalized aspirational statements are not actionable under the MCPA.

Mississippi has long recognized that "puffing" statements are not actionable misrepresentations under the common law. *See, e.g.*, *Thomas v. Miss. Valley Gas Co.*, 113 So. 2d 535, 538 (Miss. 1959); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 510 n.16 (5th Cir. 2008). Likewise, "mere expression[s] of opinion" also cannot support any liability for fraud under Mississippi law. *White v. Hancock Bank*, 477 So. 2d 265, 270 (Miss. 1985).

The State is wrong that MCPA claims are exempt from those hornbook principles. In interpreting the MCPA, Mississippi law requires courts to look to the Federal Trade Commission ("FTC") and the federal courts' construction of Section 5 of the FTC Act. *See, e.g.*, *Watson Labs., Inc. v. Mississippi*, 241 So.3d 573, 590 (2018); Miss. Code Ann. § 75-24-3(c). The FTC has explained that "subjective claims, "opinion claims," or cases involving "puffing representations" are generally not actionable. FTC Policy Statement on Deception, appended to *In the Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 174, *available at* 1984 WL 565319, at *48 (F.T.C. 1984).

4

The State provides no basis for treating the MCPA differently. The State failed to identify allegedly false factual representations rather than statements of subjective opinion or puffery.[1]

### 4. The State cannot identify a single material misrepresentation pleaded with particularity.

The PBMs combed through Plaintiffs' TAC and called out specific categories of non-quantifiable, non-actionable statements. *See* PBM Mem. at 10–16. The State, in response, could not find a single actionable misstatement in its overlong complaint.

#### a. Allegations regarding specific dollars and percentages

The State alleges that PBMs made representations "regarding the exact dollar and percentage amount" the PBMs save diabetics and payors. Pl. Opp'n at 15. The State identifies statements in which CVS represented that its clients "*could* save between $3000 to 5000 per year" (TAC ¶ 88) (emphasis added), or "approximately $3.3 million a year in medical expenditures." *Id.* ¶ 450. Those projections, which don't involve either OptumRx or ESI, cannot support a deceptive trade practices claim because any alleged misrepresentation of fact "cannot be predicated on a promise relating to future actions but rather must be related to past or presently existing facts." *Macke v. Am. Gen. Life Ins. Co.*, 2016 WL 83875, at *4 (S.D. Miss. Jan. 7, 2016) (citing *Spragins v. Sunburst Bank*, 605 So. 2d 777, 781 (Miss. 1992)).

The State also fails to identify what made those projections false. That is not optional under Rule 9(b): A plaintiff pleading fraud must "specify the statements contended to be fraudulent . . . and explain why the statements were fraudulent." *Hoffman v. L & M Arts*, 838 F.3d 568, 577 (5th Cir. 2016). The State's failure to explain how the representation is false similarly infects the State's allegation about CVS's representing that "despite manufacturer price increases of near 10

---

[1] These principles also apply to the State's obligation to identify *material* representations because "'puffing' statements . . . generally lack materiality." *In re Mobile Telecomm. Techs. Corp. Sec. Litig.*, 915 F. Supp. 828, 834 (S.D. Miss. 1995); PBM Mem. at 9–10.

5

percent," CVS "reduced trend for commercial clients to 1.9 percent per member per year the lowest in five years," and that CVS "kept drug price growth at a minimal 0.2 percent." TAC ¶ 89. The State has not identified any allegations that CVS did not achieve those specific reductions, nor could they. And reductions in what payors pay for insulin is entirely consistent with the State's allegations that "payors have secured contract provisions guaranteeing them all or some portion of the 'rebates' paid by the Manufacturers to the PBMs." *Id.* ¶ 392.

### b. Allegations related to how PBMs affect insulin prices

The State also claims that PBMs made representations "directly related to the effect of PBM conduct on diabetics' health and insulin prices." Pl. Opp'n at 15. In particular, an Express Scripts' officer allegedly stated in 2016 that "[d]iabetes is wreaking havoc on patients, and it is also a runaway cost for payors . . . [Express Scripts] helps our clients and diabetes patients prevail over cost and care challenges created by this terrible disease." TAC ¶ 450. He also allegedly represented that Express Scripts "broaden[s] insulin options for patients and bend[s] down the cost curve of what is currently the costliest class of traditional prescription drugs." *Id.*

Those are not actionable misrepresentations (and don't involve either OptumRx or CVS). Statements that Express Scripts "helps" its clients and that it can help control costs by bending down the "cost curve" for insulin products are not-actionable opinions that cannot be proven false. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012); *see also* PBM Mem. at 11–12.

### c. Allegations regarding direct representations to the State

The State purports to identify a variety of "direct" representations to the State. Pl. Opp'n at 15–16. But nearly every generalized statement identified fits into one or more of the non-actionable categories of statements identified in the PBMs' opening brief, including alleged statements that (a) PBMs are aligned with their payor clients (PBM Mem. at 11), (b) PBMs work

6

to lower prices for at-issue drugs (PBM Mem. at 11–12), and (c) PBMs create formularies and collect rebates for the benefit of diabetics and payors (PBM Mem. at 12–13). The sole exception, the allegation that 12 years ago, OptumRx represented that the State was paying "the lowest net cost" for insulin (TAC ¶ 457), fails for an even simpler reason: The State never alleged facts suggesting that statement was false.

### C. The State has not alleged facts showing that it satisfied the requirements of Miss. Code Ann. § 75-24-15.

The Supreme Court has held that the State, just like other plaintiffs, must engage in a pre-litigation dispute resolution program under Miss. Code Ann. § 75-24-15(2). *Watson Labs*, 241 So. 3d at 592 (holding that when the State brings a claim for damages under Section 1 of the MCPA, it cannot "receive the benefit of the section without also complying with the remaining provisions"). Sending a letter specific to an individual case, *see* TAC ¶ 519, is not participating in a "program," let alone an "informal dispute settlement program approved by the Attorney General." Miss. Code Ann. § 75-24-15(2). The State's MCPA claim based on being a payor or purchaser should be dismissed for failing to comply with all statutory requirements.

## II. THE STATE'S DERIVATIVE CONSPIRACY CLAIM IS DEFICIENT.

As a claim derivative of another tort, the State's civil conspiracy claim fails because the State fails to allege a violation of the MCPA. PBM Mem. at 20–22. But the conspiracy claim fails for another reason: The allegations do not include sufficient plausible facts to "substantiate an agreement" between the Defendants. *Alston v. Miss. Dep't of Emp. Sec.*, 300 So. 3d 543, 547 (Miss. Ct. App. 2020). Because the State alleges that the PBMs conspired to commit fraud (*see* I.B.1 above), the State must also satisfy Rule 9(b)'s particularity requirements for its civil conspiracy claim. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009). The

allegations that the State identifies in opposition fall well short of meeting Rule 8's requirements, never mind 9(b)'s.

*First*, the State alleges that the Manufacturers and PBMs had a "common motive" to conspire to increase profits. Pl. Opp'n at 33. But a common desire to increase profits by itself is neither unlawful nor proof of a conspiracy. *See, e.g.*, *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92 (Miss. 1992) (Mississippi "accepts no value condemning pursuit of wealth"); *Goode v. City of Southaven*, 2019 WL 3082735, at *11 (N.D. Miss May 1, 2019) (no conspiracy where actions of alleged co-conspirators "at most…amount[ed] to parallel conduct and independent actions taken by each defendant through their own review and judgment of the situation.").

*Second*, the State points to meetings and "inter-firm communications" between certain PBMs and the Manufacturers. Pl. Opp'n at 33. But the State fails to point to any communications *between the PBMs* to support an inference of an industry-wide conspiracy. And in any event, "interfirm conduct does not automatically convert parallel conduct not suggestive of a conspiracy" into an actionable conspiracy claim. *Litovich v. Bank of Am. Corp.*, 2021 WL 4952034, at *17 (S.D.N.Y. Oct. 25, 2021).

*Third*, the State argues that the Manufacturers engaged in parallel price increases. Pl. Opp'n at 33. But the State itself explains why that is not proof of a conspiracy to fix prices: the insulin "market is highly concentrated" and, as a result of various patents, "[t]he Manufacturers produce 99% of the insulins sold in Mississippi." *Id.* Parallel price increases by the Manufacturers are not proof that the PBMs participated in any conspiracy.

*Fourth*, the State points to the existence of government investigations as proof of a conspiracy. *Id.* at 33–34. But those investigations "carr[y] no weight in pleading an antitrust conspiracy claim." *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d

526, 540 (N.D. Tex. 2014) (investigations are irrelevant absent some "connection to the unlawful conduct at issue"); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007). The State has failed to plausibly plead a claim for civil conspiracy.

### III. THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM.

The State concedes that it cannot bring an independent unjust enrichment claim where express contracts exist. *See* Pl. Opp'n at 28 (arguing instead that "disgorgement" is an available remedy under the MCPA). The State also does not dispute that this claim falls if it fails to state a viable claim under the MCPA. The State asserts only that this claim survives in certain limited circumstances—its *parens patriae* capacity on behalf of Mississippi diabetics, as the purchaser of state-run facilities, and as a payor of employee health plans.

For its quasi-contractual unjust enrichment claim, the State must first "show there is no legal contract." *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 121 (Miss. 2003) (quotations omitted); PBM Mem. at 18–20. The State argues that "the PBMs have not argued that a contract exists between any Defendant and the State for purchases in state-run facilities," Pl. Opp'n at 27, but the State never even alleged that PBMs received or retained any payments or other benefits in connection with "purchases in state-run facilities."[2] On the contrary, the only relationship of any kind the State alleges between itself and any of the PBM Defendants is with regard the State's *health plans*. TAC ¶ 424 ("To administer its *health plan's* pharmaceutical programs, the State relies on PBMs as administrative agents[.]") (emphasis added); *see also id.* ¶¶ 125, 187, 225, 425–31. And in its role as a payor of employee health plans, the State's purchases of or payments for insulin are governed by an express contract. Thus, the State cannot (and does not) allege otherwise.

---

[2] The State makes no response to the PBM Defendants' argument that the State fails to plead any facts regarding from whom it made purchases relating to state-run facilities. PBM Mem. at 18.

As to its *parens patriae* claim, the State does not dispute there are many contracts involved in the sale and distribution of insulin. Rather, the State argues that the lack of a contract between the PBMs and individual Mississippi diabetics means there is no express contract precluding the claim. But the State affirmatively alleges that the PBMs enter into many contracts covering what any individual would pay for any insulin drug, including the PBMs' contracts with the Manufacturers (TAC ¶ 315), insurers (*id.* ¶ 362), and the pharmacies (*id.* ¶ 409).

Although the State suggests the express contract governing the conduct must "be between the parties" to preclude an unjust enrichment claim, (Pl. Opp'n at 27), none of the State's cases identify such a requirement.[3] And a privity requirement would run contrary to the established Mississippi rule that the "mere fact that a third person . . . benefits from an arrangement between two other persons . . . does not make such third person liable in quasi contract, unjust enrichment, or restitution." *Omnibank of Mantee*, 607 So. 2d at 92–93.

## IV. THE STATE'S CLAIM FOR UNLIMITED TIME TO PURSUE ITS CLAIMS SHOULD BE REJECTED.

Offering only a 10-year-old unpublished opinion from a Circuit Court in Rankin County, the State argues that it can bring a claim on behalf of all its citizens without any time-limitation or even equitable bar under the doctrine of laches. The State's extraordinary claim of limitless authority to bring ancient claims *parens patriae* is unprecedented. *See New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 40 (D.D.C. 2021) (holding doctrine of laches applies to *parens patriae* claims brought by numerous state attorneys general). And for the reasons provided in the PBMs' opening brief, the Court should find that these claims are time-barred. *See* PBM Mem. at 22–24.

---

[3] *See Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. Ct. App. 2015) (existence of legal contract governing the dispute not challenged on appeal); *Taylor Made Smiles, PLLC v. Franklin Collection Serv., Inc.*, 224 So. 3d 565, 569 (Miss. Ct. App. 2017) (affirming unjust enrichment judgment because despite the existence of a contract, the "contract was silent as to the matter before the court"); *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1181 (Miss. 2004) (jurisdictional dispute unrelated to existence of contract).

                                Respectfully submitted,

                                By: */s/Stephanie M. Rippee*
                                Attorney for Express Scripts, Inc., Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, and Medco Health Solutions, Inc.

OF COUNSEL:
Stephanie M. Rippee (MB #8998)
WATKINS & EAGER PLLC
Post Office Box 650
Jackson, MS 39205-0650
(601) 965-1900 (p)
(601) 965-1901 (f)
srippee@watkinseager.com

Jason R. Scherr (admitted *pro hac vice*)
Patrick A. Harvey (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-6000 (p)
(202) 739-6001 (f)
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
Attorneys for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark RX, L.L.C.; Caremark, L.L.C.; and CaremarkPCS Health, L.L.C.

*/s/ J. Cal Mayo, Jr.*
J. Cal Mayo, Jr., MSB No. 8492
cmayo@mayomallette.com
**MAYO MALLETTE PLLC**
2094 Old Taylor Road, Suite 200
Oxford, MS 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035

Breanna F. G. Young, MSB No. 105536
byoung@mayomallette.com
**MAYO MALLETTE PLLC**
4400 Old Canton Road, Suite 150
Jackson, MS 39211
Telephone: (601) 366-1106

11

Facsimile: (662) 236-0035

Enu Mainigi (admitted *pro hac* vice)
Craig Singer (admitted *pro hac vice*)
R. Kennon Poteat III (admitted *pro hac vice*)
Daniel Dockery (admitted *pro hac vice*)
Atticus W. DeProspo (admitted *pro hac* vice)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
ddockery@wc.com
adeprospo@wc.com

/s/ Roy D. Campbell, III
Roy D. Campbell, III, MSB No. 5562
rcampbell@bradley.com
Jonathan M. Barnes, MSB No. 105659
jbarnes@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Telephone: (601) 592-9934
Facsimile: (601) 948-3000
Brian D. Boone (pro hac vice)
ALSTON & BIRD LLP
101 S. Tyron St., Ste. 4000
Charlotte, NC 28280
T: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Elizabeth Broadway Brown (pro hac vice)
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street, N.W., Ste. 4900
Atlanta, GA 30309-3424
T: (404) 881-4688
Fax: (404) 881-7777
liz.brown@alston.com

Kelley Connolly Barnaby (pro hac vice)

12

ALSTON & BIRD LLP
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
Fax: (202) 239-3333
kelley.barnaby@alston.com

Lane Zuraw (pro hac vice)
ALSTON & BIRD LLP
506 Mission St., Ste. 2100
San Francisco, CA 94105
T: (415) 243-1000
Fax: (415) 243-1001
lane.zuraw@alston.com

Attorneys for UnitedHealth Group Incorporated, Optum, Inc., OptumRx Holdings, LLC, OptumRx, Inc., and OptumInsight, Inc.