UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE STATE OF MISSISSIPPI, EX REL.                                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL

V.                                              CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP

ELI LILLY AND COMPANY, et al.,                                       DEFENDANTS

ORDER

Before the Court are Defendants Eli Lilly and Company ("Eli Lilly"), Novo Nordisk Inc. ("Novo Nordisk"), and Sanofi-Aventis U.S. LLC.'s ("Sanofi") motions to dismiss. [85], [83]. For the following reasons, the Court denies the motions.

I.    Facts and Procedural History

This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County Chancery Court, alleging that the "Manufacturer Defendants"[1] conspired with the "Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[2] to artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. ¶ ¶ 5–16.

---

[1] Eli Lilly, Novo Nordisk, and Sanofi, collectively.
[2] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi." Third Amend. Compl. [71] ¶ 5. Likewise, the State alleges that the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." *Id.* ¶ 6. As part of this work, the State alleges, the PBM Defendants "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* ¶¶ 12, 19.

The heart of the "Insulin Pricing Scheme" as alleged by the State is that the Manufacturer Defendants "artificially and willingly" raise their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* ¶ 20. The reason this system exists, the State alleges, is so the Manufacturer Defendants can pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.* at ¶ 23. The PBM Defendants in turn retain a significant percentage of these undisclosed rebates, while using the false list price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* at ¶ 24.

The publicly available price is known as its "Average Wholesale Price" ("AWP") or "Wholesale Acquisition Cost" ("WAC"). *Id.* ¶ 301. Allegedly, this price and prices based on the AWP or WAC are self-reported by drug manufacturers and published in compendiums such as First DataBank, Redbook, and others. *Id.* at ¶ 302. The State's 118-page Complaint contains in-depth detail about specific insulin drug pricing over time, and how those prices relate to each Defendant.

The State alleges that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* ¶ 21. The State alleges, then, the price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278.

As a result, the State sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through its employee health plans and as a purchaser of the drugs for its state-run facilities. *Id.* ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State brought claims against the Defendants for violating the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. [71] ¶¶ 1, 518–551. The Manufacturer Defendants then filed two motions to dismiss: one for lack of personal jurisdiction under Rule 12(b)(2), and one for failure to state a claim under Rule 12(b)(6). The Court addresses each in turn.

II.  Motion to Dismiss for Lack of Personal Jurisdiction [85]

A. Standard

Under Rule 12(b)(2), a lawsuit may be dismissed for a lack of personal jurisdiction. *See* Fed. R. Civ. 12(b)(2). "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (quoting *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). The Court must take the "allegations contained in the complaint, except insofar as controverted by opposing affidavits," as true. *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). If the Court does not rely on an evidentiary hearing but decides the motion based on the pleadings and exhibits on file, the plaintiff need only present a prima facie case of personal jurisdiction. *DeCarlo v. Bonus Stores, Inc.*, 413 F. Supp. 2d 770, 775 (S.D. Miss. 2006) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982)). When deciding whether a prima facie case has been established, all conflicts in the facts alleged in the complaint and opposing affidavits must be resolved in the plaintiff's favor. *DeCarlo*, 413 F. Supp. 2d at 775 (citing *Thompson v. Chrysler Motors, Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) and *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)).

B. Analysis

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal

4

jurisdiction over the defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

The Manufacturer Defendants assert that, regardless of the Court's ruling on Mississippi's long-arm statute, exercise of jurisdiction would not comport with due process under the United States Constitution. Mem. in Support of Mot. to Dismiss [86] at 5–6.

1. Mississippi's Long Arm Statute

Mississippi's long-arm statute provides,

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

Mississippi courts have interpreted the statute to contain three components: contract, tort, and "doing-business." *Fitch v. Wine Express*, Inc., 297 So. 3d 224, 228 (Miss. 2020). In other words, to exercise jurisdiction, the Court must find that: (1) the Manufacturer Defendants entered into a contract to be performed, in whole or in part, in Mississippi, (2) the Manufacturer Defendants committed a tort, in whole or in part, in Mississippi, or (3) the Manufacturer Defendants were "doing business" in Mississippi. *Farani v. File*, 565 F. Supp. 3d 804, 808 (S.D. Miss. 2021). Only one of

5

these components need be present to confer personal jurisdiction under the statute. *Id.*

The State alleges that the Manufacturer Defendants "are registered to do business in Mississippi, conduct business in Mississippi, and sold the at-issue drugs to the State and its citizens in Mississippi." Mem. in Opp. of Mot. to Dismiss. [100] at 6 (citing [71] at ¶¶ 41–82). The State therefore contends that the Manufacturer Defendants are subject to Mississippi courts' jurisdiction under the long-arm statute. *Id.* The Manufacturer Defendants do not dispute these allegations in their reply brief. *See generally* Reply [103]. The Court therefore finds that it may exercise personal jurisdiction over the Manufacturer Defendants under the "doing business" prong of Mississippi's long-arm statute. *See Fitch*, 297 So. 3d at 229–30 (holding that a defendant selling goods via a virtual store in Mississippi satisfied the "doing business" prong of the long-arm statute).

The Court next turns to whether the exercise of personal jurisdiction is consistent with due process under the United States Constitution.

2. Due Process under the United States Constitution

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink*, 190 F.3d at 336 (quoting *Latshaw v. Johnston*, 167 F.3d

6

208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945))).

Personal jurisdiction is either general or specific. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "If a defendant's contacts with the forum state are continuous and systematic, a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts." *Id.* (internal quotations and citation omitted). "If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). Only specific jurisdiction is at issue.

Courts in the Fifth Circuit may exercise specific personal jurisdiction when three conditions are met. First, the nonresident defendant must "purposefully avail itself of the privilege of conducting activities in the forum state." *Johnson v. TheHuffingonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (cleaned up) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). Second, the plaintiff's claim "must arise out of or relate to" those purposeful contacts. *Id.* Third, the Court's exercise of jurisdiction must be "fair and reasonable" to the nonresident defendant. *Id.* citing *Seiferth*, 472 F.3d at 271. The Court addresses each requirement in turn.

### a. Purposeful Availment Requirement

For the Court to exercise specific jurisdiction, the defendant must purposefully avail itself in the forum state by having minimum contacts; these contacts must not

7

be "random, isolated, or fortuitous." *Ford Motor Co.*, 141 S. Ct. at 1025 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Rather, the contacts must stem from the defendant's choice to "reach[] out beyond" its home, such as "exploiting a market" in the forum state or entering a contractual relationship there. *Id.* (cleaned up) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

To determine whether a defendant has "minimum contacts" with a forum state, the Court must identify "some act whereby it purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469–70 (5th Cir. 2006) (cleaned up). The defendant's actions must show that it "reasonably anticipates being haled into court" in Mississippi. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A defendant's decision to place its product in the steam of commerce, while having the knowledge that the product will be used in the forum state, constitutes minimum contacts. *World Wide Volkswagen Corp.*, 444 U.S. at 298. The Fifth Circuit "has consistently held that 'mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Luv N' Care*, 438 F.3d at 470 (citing *Ruston Gas Turbines v. Donaldson Co.*, 9 F3d 415, 419 (5th Cir. 1993) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111 (1987))).

The Fifth Circuit "has been reluctant to extend the stream-of-commerce principle outside the context of products liability cases," but personal jurisdiction

8

nevertheless exists where "the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present." *Id.* at 472–73. Similar cases to products liability include "where a defendant places a product in the stream of commerce as part of a sales or distribution network designed to market its products nationwide (or at least outside of its home state) where it would derive financial benefit from sales in the forum." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 373 (5th Cir. 2010). "Deriving revenue from such commercial activity is the quid pro quo for requiring the defendant to suffer suit in the foreign forum." *Id.*

That is the case here. All three Manufacturer Defendants are licensed to do business in Mississippi. [71] at ¶¶ 41, 56, 72. They hold permits with the Mississippi Board of Pharmacy. *Id.* at ¶¶ 42, 57, 71. They allegedly "promote and distribute" the at-issue diabetic medications in Mississippi. *Id.* at ¶¶ 44, 59, 73. And they allegedly transact business in Mississippi, employ sales representatives in Mississippi to promote and sell the at-issue diabetic medication, and direct advertising and informational materials to Mississippi residents "for the specific purpose of selling more of the at-issue drugs in Mississippi." ¶¶ 47–49, 62–64, 76–78.

Resolving facts alleged in the Complaint in the State's favor, the Court finds that the Manufacturer Defendants have "minimum contacts" with Mississippi and could reasonably foresee being haled into court in Mississippi. *See World Wide Volkswagen Corp.*, 444 U.S. at 297.

b. "Arise out of" or "Relate to" Requirement

The Court next turns to whether the State's claims "arise out of" the Manufacturer Defendants' contacts with Mississippi.

Because the defendant is not "at home" in specific jurisdiction cases, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co.*, 141 S. Ct. at 2025 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Ca., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017)). "[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id.* (cleaned up) (citing *Bristol-Myers*, 137 S. Ct. at 1780).

The State claims MCPA violations, unjust enrichment, and civil conspiracy against the Manufacturer Defendants. The State's claims arise out of the price of at-issue medications that the Manufacturer Defendants placed into the stream of commerce and are sold in Mississippi. This connection is enough to confer personal jurisdiction. *See Luv N' Care*, 438 F.3d at 473 (holding that copyright infringement claims related to a bottle put into the stream of commerce satisfies purposeful availment and "arise out of" prongs for specific jurisdiction); *In re Chinese Manufactured Drywall Prod. Liability Lit.*, 742 F.3d 576, 591 (5th Cir. 2014) (holding that the nonresident defendant's contacts with the forum state stem from its sales to a forum-state company, and those sales caused the at-issue injury to the forum state's residents, therefore satisfying the "arise out of" prong for personal jurisdiction). The Court therefore finds this prong of specific jurisdiction satisfied.

c. Fair and Reasonable Requirement

The Court next turns to whether the exercise of personal jurisdiction over the Manufacturer Defendants is fair and reasonable. At this stage, the burden shifts to the Manufacturer Defendants "to show that the exercise of personal jurisdiction is unfair or unreasonable." *Seiferth*, 472 F.3d at 276. The Manufacturer Defendants do not make any argument on this requirement. Therefore, because all other requirements for specific personal jurisdiction are met, the Court finds exercise of personal jurisdiction to be fair and reasonable under the Constitution.

Because the Manufacturer Defendants meet all the requirements for the Court to exercise personal jurisdiction, the Motion to Dismiss for Lack of Personal Jurisdiction [85] is denied.

III. Motion to Dismiss for Failure to State a Claim [83]

A. Standard

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (alteration omitted)). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard does not ask for a probability of unlawful

conduct but does require more than a "sheer possibility." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's pleading burden. *Id.* (citing *Twombly*, 550 U.S. at 555).

B. Analysis

1. MCPA Claim

The Manufacturer Defendants contend that the State fails to allege a claim under the MCPA because the State fails to identify a misrepresentation and fails to satisfy Rule 9(b)'s pleading requirements. Mem. in Support. Mot. to Dismiss [84] at 7. The State asserts that the Manufacturer Defendants interpret the MCPA too narrowly, and that the Complaint allegations satisfy both Rule 8 and Rule 9(b) pleading requirements. Mem. in Opp. [98] at 7–15.

The MCPA prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). "Mississippi does not require a finding of fraud for an act to be deemed unfair or deceptive." *In re Miss. Medicaid Pharma. Avg. Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015). Rather, Mississippi courts are "guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act." *Id.* (citing Miss. Code Ann. § 75-24-3). A trade practice is unfair if three factors are met: (1) it causes or is likely to cause a substantial injury; (2) the injury is not "outweighed by any countervailing benefits to consumers or competition that the practice produces;" and (3) the injury could not have been reasonably avoided. *Id.* (citing 15 U.S.C. § 45(n)).

*In re Mississippi Medicaid Pharmaceutical Average Wholesale Price Litigation* is instructive. There, the State of Mississippi sued a generic pharmaceutical provider, alleging that it violated the MCPA by reporting inflated AWPs. *Id.* at 834. The State alleged that the pharmaceutical provider "deliberately created and marketed the discrepancy . . . between the actual prices of [the] drugs and the reported AWPs in order to increase market share and profit." *Id.* at 834. In response, the pharmaceutical provider argued that "the reported AWPs were understood by all parties to be an essentially fictitious sticker price that had no relation to the actual cost of the drugs." *Id.* at 835.

The trial court found that the pharmaceutical provider's "submission of Average Wholesale Prices to First Data Bank that has no predictable relationship to what customers pay for its drugs while knowing Mississippi relied on this information . . . is an unfair and deceptive trade or practice within the meaning of [the MPCA]." *Id.* at 841 (alterations removed). The Mississippi Supreme Court affirmed this finding on appeal. *Id.* at 842 (collecting cases). Because the AWPs "were exaggerated to an extent that they were not even prices," the court did not err in holding that they were false information, which is deceptive and violates the MCPA. *Id.*

This reasoning holds true here. The State alleged that all three Manufacturer Defendants reported exaggerated prices, knowing that other entities, including the State, relied on these prices. [71] at ¶¶ 282–288, 302, 367–68, 443–445. The State plausibly alleges this "deceptive" practice under the MCPA. *See In re Miss. Medicaid*

*Pharm. Average Wholesale Price Litig.*, 190 So. 3d at 842. The State's allegations therefore survive the plausibility standard. *See Iqbal*, 556 U.S. at 678.

Though liability under the MCPA does not require a finding of fraud for an act to be unfair or deceptive, *see In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d at 841, the Court finds that the State's allegations also survive the Rule 9(b) particularity standard. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

In its 118-page Complaint, the State delineates each Manufacturer Defendant's alleged participation in the "Insulin Pricing Scheme," including specific drugs, prices, timelines, knowledge, and intent. *See* [71] at ¶¶ 40–83, 249–303, 433–445. The Court finds that this level of detail satisfies the "who, what, when, where, and how" of the alleged fraud. *See Benchmark Elecs.*, 343 F.3d at 724. The Court therefore finds that the State's MCPA claim is adequately pled under both pleading standards. The motion to dismiss as to that claim is denied.

   2. Compensatory and Punitive Damages

The Manufacturer Defendants next move to dismiss the State's claims for compensatory and punitive damages under the MCPA. [84] at 16–17. They argue that the State is not entitled to compensatory damages because § 75-24-15 applies to

private actions, not public actions. *Id.* The State retorts that it is a "person" within the meaning of the MCPA, and § 75-24-11 authorizes the Court to award restitution. [98] at 22–24.

Section 75-24-11 of the MCPA provides that the Court "may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or person, which may have been acquired by means of any practice prohibited by this chapter." Miss. Code Ann. § 75-24-11. The State is a "person" under the statute. Miss. Code Ann. § 75-24-3; *see also Hood ex rel. State v. BASF Corp.*, 2006 WL 308378, at *11 (Miss. Chan. Ct. Jan. 17, 2006).

The Manufacturer Defendants cite to *Watson Laboratories v. State*, 241 So. 3d 573, 593 (Miss. 2018), to assert that the State is not entitled to compensatory damages. [84] at 17. This reliance, however, is unfounded. In *Watson*, the Mississippi Supreme Court declined to reverse the trial court's denial of compensatory damages because the State did not address the applicability of § 75-24-11 in a meaningful way during the proceedings. *Id.* The court did not hold that the State was precluded from seeking damages under that section of the statute. The Manufacturer Defendants do not cite case law to support their contention that compensatory damages are unavailable. The motion is therefore denied as to this claim.

The Manufacturer Defendants next assert that the State cannot seek punitive damages. [84] at 17. In Mississippi, a plaintiff seeking punitive damages must adequately plead that the defendant "acted with actual malice, gross negligence

15

which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(a).

The State adequately pled actual fraud under the 9(b) standard. Therefore, for the reasons discussed in Section III.B.1, *supra*, the Court finds that the State adequately pled punitive damages. The motion to dismiss the State's claim for punitive damages is denied.

3. Unjust Enrichment

The Manufacturer Defendants next move to dismiss the State's unjust enrichment claim. [84] at 18. The Court recognizes that "unjust enrichment is considered to be a remedy." *Mosley v. GEICO Ins. Co.*, 2014 WL 7882148, at *5 (S.D. Miss. Dec. 16, 2014). "Unjust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) (citation omitted).

The State's Complaint does not allege a contract between the State and the Manufacturer Defendants. Further, Mississippi law recognizes that a third-party beneficiary to a contract may be liable for unjust enrichment "if the third person . . . procured the mistake or participated in or caused a breach of some duty imposed by law." *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92–93 (Miss. 1992).

The Court finds that the State plausibly alleges an unjust enrichment claim based on the Manufacturer Defendants' alleged participation in the "Insulin Pricing

Scheme." *See* [71] at ¶¶ 282–288, 302, 367–68, 443–445. The Court therefore denies the motion to dismiss on this claim.

    4. Civil Conspiracy

The Manufacturer Defendants finally move to dismiss the State's civil conspiracy claim. [84] at 20. They contend that the civil conspiracy claim fails because "the State does not adequately allege an agreement or common purpose to violate the MCPA," including "an unlawful agreement involving the Manufacturer [Defendants]." *Id.* at 20–21. For the reasons stated in Section III.B.1, the Court disagrees, and denies the motion to dismiss on this claim.

The Court finds that the State has adequately pled its claims. The Court therefore denies the Motion to Dismiss for Failure to State a Claim [83] in its entirety.

IV.    Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the Court's decision. For these reasons, the Court DENIES the Manufacturer Defendants' motions to dismiss [85], [83].

SO ORDERED AND ADJUDGED this the 9th day of August, 2022.

                                                  s/ *Kristi H. Johnson*
                                                  UNITED STATES DISTRICT JUDGE