UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


THE STATE OF MISSISSIPPI, EX REL.                                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL


V.                                          CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP


ELI LILLY AND COMPANY, et al.,                                      DEFENDANTS


ORDER

Before the Court are Defendants CVS Health Corporation, CVS Pharmacy,

Inc., Caremark PCS Health, L.L.C., Caremark Rx L.L.C., Caremark, L.L.C., ESI

Mail Pharmacy Services, Inc., Evernorth Health, Inc., Express Scripts

Administrators, LLC, Express Scripts Pharmacy, Inc., Express Scripts, Inc., Optum,

Inc., OptumInsight, Inc., OptumRx Holdings, LLC, OptumRx, Inc., and

UnitedHealth Group, Inc.'s[1] motion to dismiss. [89]. For the following reasons, the

Court grants in part and denies in part the motion.

   I.      Facts and Procedural History

       This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex

rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County

Chancery Court, alleging that the "Manufacturer Defendants"[2] conspired with the

---

[1] Optum, Inc., OptumInsight, Inc., OptumRx Holdings, LLC, and UnitedHealth Group are no
longer parties pursuant to this Court's Order on August 15, 2022. [112].
[2] Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC, collectively.

"Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[3] to artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. ¶ ¶ 5–16.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi," while the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." Third Amend. Compl. [71] ¶ 5-6. Part of the PBM Defendants' work is to "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* ¶¶ 12, 19.

The heart of the alleged "Insulin Pricing Scheme" is the Manufacturer Defendants "artificially and willingly" raising their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* ¶ 20. That system, the State alleges, allows the Manufacturer Defendants to pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.*¶ 23. In return, the PBM Defendants retain a significant percentage of these

---

[3] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

undisclosed rebates, while using the false list price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* ¶ 24.

The State believes that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* ¶ 21. The price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278.

The State accordingly sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through both its employee health plans and drug purchases for its state-run facilities. *Id.* ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State's theories include violation of the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. [71] ¶¶ 1, 518–551. The PBM Defendants now move to dismiss for six reasons: (1) the State failed to meet Rule 9(b) in pleading MCPA claims; (2) the State's claims are procedurally defective because it does not allege that it attempted to resolve its MCPA claims through an informal dispute resolution program, as required by Miss. Code Ann. § 75-25-15(2); (3) the State may not bring a quasi-contractual claim for unjust enrichment because the State's allegations focus on actual contracts; (4) the State did not plausibly or particularly allege that the PBM Defendants entered a

conspiracy to increase insulin prices; (5) the State's *parens patriae* claims are time-barred; and (6) the PBM corporate parents should be dismissed for failure to allege facts implicating those entities in challenged conduct. Mem. in Supp. of Mot. to Dismiss [90] at 2–3.

## II.    Standard

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (alteration omitted)). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's pleading burden. *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.    Analysis

### A.  Statute of Limitations

PBM Defendants first argue that Mississippi's three-year statute of limitations bars the State's claims. [90] at 22–23 (citing Miss. Code Ann. § 15-1-49).

The State correctly notes that the statute of limitations does not run against the State in Mississippi. *See* Miss. Code Ann. § 15-1-51 ("Statutes of limitation in civil cases shall not run against the [S]tate . . ."). PBM Defendants do not provide any case law to support their contention that the State's *parens patriae* claims are subject to statutes of limitations under § 15-1-49. The State asserts that no Mississippi civil case has ever applied or imposed a statute of limitations on the State in a *parens patriae* action. [96] at 25. The Court is also unaware of any authority and therefore denies the motion to dismiss on this issue.

B. MCPA Claim

1. § 75-24-15 Requirements

PBM Defendants next contend that the State failed to comply with § 75-24-15(2) because it did not sufficiently allege that it attempted to resolve its MCPA claims through an informal dispute settlement program approved by the Attorney General. [90] at 16. The State does not concede that this requirement applies to actions brought by the State but still asserts that it attempted informal dispute resolution. [96] at 22–23.

The State argues that it "reasonably attempted to resolve its claims through an informal dispute settlement program approved by the Attorney General with each Defendant" before filing suit. [71] at ¶ 519. It points to "correspondence from the Office of the Attorney [sic] to the Defendants dated May 17, 2021" documenting that settlement attempt. *Id.* It further alleges that the "Defendants failed to adequately respond to the State's request to resolve these claims." *Id.*

The Court declines to rule on whether the State is subject to the § 75-24-15(2) requirement but finds that, regardless, the State plausibly alleged that it complied with § 75-24-15(2).

Next, PBM Defendants assert that they are not subject to suit under the MCPA because the State failed to allege that the PBM Defendants "sold, leased, manufactured, or produced any insulin products the State purchased." [90] at 17–18. The State responds that it does, in fact, allege that the PBM Defendants sold diabetes drugs through retail and mail-order pharmacies. [96] at 24 (citing [71] at ¶¶ 128, 225, 427, 430). The Court therefore finds that the State "plausibly alleged" that it purchased insulin products from the PBM Defendants.

Additionally, Section 75-24-15(1) provides that MCPA claims may be brought against "the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5." Miss. Code Ann. § 75-24-15(1). The Court finds that the State plausibly stated a claim that the PBM Defendants engaged in a "method, act or practice" prohibited by § 75-24-5 to subject them to a claim under the MCPA.

The motion to dismiss is denied on those grounds.

### 2.  Pleading Requirements

The PBM Defendants contend that the State failed to allege a claim under the MCPA because it did not identify misrepresentative statements to satisfy Rule 9(b)'s pleading requirements. [90] at 7, 10. The State responds that the Complaint's allegations satisfy both Rule 8 and Rule 9(b) pleading requirements. Mem. in Opp. [96] at 6–21.

The MCPA prohibits "[u]nfair methods of competition…and unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). "Mississippi does not require a finding of fraud for an act to be deemed unfair or deceptive." *In re Miss. Medicaid Pharma. Avg. Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015). Rather, Mississippi courts are "guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act." *Id.* (citing Miss. Code Ann. § 75-24-3). A trade practice is unfair if three factors are met: (1) it causes or is likely to cause a substantial injury; (2) the injury is not "outweighed by any countervailing benefits to consumers or competition that the practice produces;" and (3) the injury could not have been reasonably avoided. *Id.* (citing 15 U.S.C. § 45(n)). The Court finds that the State plausibly pled these factors here.

Though liability under the MCPA does not require a finding of fraud for an act to be unfair or deceptive, *see In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d at 841, the Court finds that the State's allegations also survive the Rule 9(b) particularity standard. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

In its 118-page Complaint, the State describes the PBM Defendants' alleged participation in the "Insulin Pricing Scheme," including timelines, knowledge, intent, specific statements about insulin pricing that the State particularly alleges are false, and communications about the Insulin Pricing Scheme between PBM Defendants and Manufacturer Defendants. *See* [71] at ¶¶ 86–96, 118–131, 134–143, 172–188, 215–231. The Court finds that this level of detail satisfies the "who, what, when, where, and how" of any alleged fraud-based claim at the motion to dismiss stage. *See Benchmark Elecs.*, 343 F.3d at 724. The Court therefore finds that the State adequately pled its MCPA claim under both pleading standards. The Court denies the motion to dismiss as to that claim.

### C. Unjust Enrichment Claims

The Court recognizes that "unjust enrichment is considered to be a remedy." *Mosley v. GEICO Ins. Co.*, 2014 WL 7882148, at *5 (S.D. Miss. Dec. 16, 2014). "Unjust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) (citation omitted).

PBM Defendants contend that the State's claims stem from a contractual dispute, and therefore the State cannot bring an unjust enrichment claim. [90] at 18–20. The State counters that its claims derive from extracontractual conduct and that it does not allege any contract in its *parens patriae* capacity. [96] at 27–28.

Because the State plausibly states that its claims do not stem from its contracts with any of the PBM Defendants, and the PBM Defendants do not point to any contract from which these claims arise, the Court denies the motion to dismiss as to unjust enrichment.

### D. Civil Conspiracy Claims

PBM Defendants next move to dismiss the State's civil conspiracy claim. [90] at 20–22. They contend that the civil conspiracy claim fails because it "does not adequately allege an agreement to violate the MCPA." *Id.* at 21. The Court disagrees.

For the reasons stated in Section III.B.2, *supra*, the Court denies the motion to dismiss as to that claim.

### E. PBM Corporate Parent and Affiliate Entities

Finally, the PBM Defendants argue that their corporate parents should be dismissed. [90] at 24. The Court already dismissed UnitedHealth Group Incorporated, Optum, Inc., OptumRx Holdings, LLC, and OptumInsight in its August 15, 2022 Order. *See* [112]. Therefore, the only remaining relevant PBM Defendants are CVS Pharmacy, Inc. ("CVS Pharmacy"), CVS Health Corporation ("CVS Health"), and Evernorth Health Inc. ("Evernorth"). [90] at 24.

PBM Defendants assert that the State does not state a plausible claim for relief against the PBMs' corporate parents and the Court should not pierce the corporate veil to hold them liable. *Id.* at 24–25. For the following reasons, the Court agrees and will analyze claims against those PBM Defendants separately.

"It is a general principle of corporate law deeply ingrained in our economic legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations a citation omitted). "Mississippi case law generally favors maintaining corporate entities and avoids attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (citation omitted).

At most, the State alleges that the CVS Pharmacy, CVS Health, and Caremark Rx, L.L.C. share corporate officers, company policies, and stock ownership. [71] at ¶ 117. The same holds true for Evernorth sharing officers, policies, and stock ownership with Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc. *Id.* at ¶ 170. "The conclusory allegation that the parent companies exercise substantial control over [subsidiary companies] . . . does not make out a prima facie showing of an alter-ego relationship." *Alexander v. Global Tel Link Corp.*, 2018 WL 8997440, at *4 (S.D. Miss. May 14, 2018). "The Fifth Circuit has noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between . . . corporations." *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371, at *3 (N.D. Miss. Sept. 18, 2008) (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). "Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for

jurisdictional purposes." *Id.* (cleaned up) (citing *Hargrave v. Fibreboard Corp.*, 710

F.2d 1154, 1160 (5th Cir. 1983). The State makes no such allegations.

The following factors are also relevant in determining whether a corporation

constitutes an instrumentality or alter ego:

> (1) The parent corporation owns all or a majority of the capital stock of
> the subsidiary. (2) The parent and subsidiary corporations have
> common directors or officers. (3) The parent corporation finances the
> subsidiary. (4) The parent corporation subscribes to all the capital
> stock of the subsidiary or otherwise causes its incorporation. (5) The
> subsidiary has grossly inadequate capital. (6) The parent corporation
> pays the salaries or expenses or losses of the subsidiary. (7) The
> subsidiary has substantially no business except with the parent
> corporation or no assets except those conveyed to it by the parent
> corporation. (8) In the papers of the parent corporation and in the
> statements of its officers, "the subsidiary" is referred to as such or as a
> department or division. (9) The directors or executives of the
> subsidiary do not act independently in the interest of the subsidiary
> but take direction from the parent corporation. (10) The formal legal
> requirements of the subsidiary as a separate and independent
> corporation are not observed.

*North American Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879

(N.D. Miss. 1984) (citation omitted). Again, the State fails to allege facts supporting

that CVS Health and CVS Pharmacy are alter egos of each other, Caremark, L.L.C.,

or CaremarkPCS Health, L.L.C. Likewise, the State fails to allege facts supporting

that Evernorth is the alter ego of Express Scripts, Inc., Express Scripts

Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service,

Inc., or Express Scripts Pharmacy, Inc.

Accordingly, the Court finds it inappropriate to pierce the corporate veil. But

the Court does find that the State adequately pled its claims against CVS Health

and Evernorth. The State alleged that CVS Health designed pharmacy benefit

plans, negotiated with the Manufacturer Defendants, and publicly represented that it constructs programs to lower the cost of the at-issue diabetes medications. *See* [71] at ¶¶ 84–96. Likewise, the State plausibly alleges that Evernorth participated in the alleged Insulin Pricing Scheme. *See id.* at ¶ 142.

As to CVS Pharmacy, however, Court grants the PBM Defendants' motion. The State merely alleges that CVS Pharmacy "provided retail pharmacy services in Mississippi" and it is therefore somehow connected to the alleged Insulin Pricing Scheme. The Court finds that this sole allegation is insufficient to plausibly plead CVS Pharmacy's involvement in the alleged Insulin Pricing Scheme.

IV.    Conclusion

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. The Court GRANTS IN PART and DENIES IN PART the PBM Defendants' Motion to Dismiss [89]. Claims against Defendant CVS Pharmacy are dismissed. As to claims against all other Defendants, the motion is DENIED.

SO ORDERED AND ADJUDGED this the 29th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE